## PROOF AS TO HABITUAL DRUNKENNESS.

Common Pleas Court of Ashland County.

HATTIE D. COLLINS v. THOMAS G. COLLINS.

Decided, 1912.

*Divorce—Husband Charged with habitual Drunkenness—Occasional Lapses Not Sufficient to Establish Such a Charge, Where the Conduct of the Defendant is Otherwise Good—Section 11979.*

A decree of divorce will not be granted against a husband on the ground of habitual drunkenness for three years, where there is proof that he is an industrious man, and desires to live with his wife and provide for their children, and his appearance is not that of one addicted to drink, and there is no proof of his having been intoxicated, except on four occasions, during the last three years.

*W. J. Weirick,* for plaintiff.
*Semple & Sharrick,* contra.

DEVOR, J.

The plaintiff filed her petition in the court for a divorce from the defendant, and a copy of the petition and summons was personally served on defendant, May 16, 1911.

The plaintiff charges the defendant, in her petition, as a ground for divorce, with habitual drunkenness, for three years last past.

The defendant filed his answer June 24, 1911, and denied the charge made against him.

The case was submitted to the court upon the pleadings and evidence, and it appears that plaintiff and defendant were married March 28, 1897, and that four children were born as the issue of this marriage. There are two living, Bessie Collins, aged eleven years, and Florence Collins, aged four years. The other two are dead.

The defendant owns and operates a portable sawmill. He is away in the woods and timber at work while his wife and children are at home. The defendant is industrious and good-na-

tured, but not in full sympathy with his wife's refined tastes and ideals.

The proof shows that the defendant, the night before Christmas, in the year 1907, came home intoxicated, and fell over in a rocking chair and broke the chair and a window pane.   Also, a few days before Christmas in 1910, he went to Mansfield, Ohio, to sell Christmas trees, and came home intoxicated, and brought two men with him.   They stayed up all night drinking in the house.   Also, about Christmas, in 1911, he came home intoxicated, and quarreled with his wife, the plaintiff.   Also, in May, 1911, he had a quart of whiskey at home, and invited Bert Sentle to his home and they together drank the quart of whiskey.

The plaintiff testified that during the last year the defendant was worse than the two years previous to the filing of her petition.

The defendant denies that he is an habitual drunkard.   He admits that he will take a drink now and then ''to sweeten life,'' and admits that on the dates mentioned by the plaintiff he was intoxicated.   The proof fails to show that he ever molested his wife in the least.   He says that he loves his wife and children and wants to live with them and provide for them.

The law of Ohio provides that habitual drunkenness for a period of three years a ground for divorce.   The law requires three years of habitual drunkenness.   This was made a ground for divorce in Ohio, March 1, 1834, and, from that date to this, there is no decision that I can find in Ohio defining what habitual drunkenness for three years means, in actions for divorce.

The case of *Miller* v. *Gleason*, 18 C. C., 374, was an action for damages for selling intoxicating liquors to her husband.   The court defines an habitual drunkard in that case to be a person who had formed the habit and indulged in it, by drinking to excess and becoming intoxicated, whether daily and continuously or periodically, with sober intervals of a greater or less length.   ''If he had formed the habit of drinking liquor to excess and of becoming intoxicated, he would be an habitual drunkard, whether he was drunk all the time or whether he was drunk periodically with sober intervals of greater or less extent.''

The case of *Union Mutual Life Ins. Co.* v. *Reif*, 36 Ohio St., 596, was an action to recover upon a life insurance policy and in deciding the meaning of "correct and temperate habits" the court say, "An occasional excess in the use of intoxicating liquor does not, it is true, constitute a habit, or make a man intemperate. * * * The habit of using intoxicating liquors to excess is the result of indulging a natural or acquired appetite, by continued use, until it becomes a customary practice. This habit may manifest itself in practice by daily or periodical intoxication or drunkenness."

The case of *Crabtree* v. *State*, 30 Ohio St., 382, was a criminal prosecution for selling beer and ale to a man in the habit of getting intoxicated and the court say, "Habitual intoxication is by no means a clearly defined condition. As this case does not call for a definition of that condition, we will not attempt to define it with accuracy. When we say a person is in the habit of getting intoxicated, it ordinarily means those times occur about as often as he finds an opportunity to do so. The difficulty of determining whether this habit attaches to a particular person arises mostly from want of a settled standard for comparison."

Then, how shall habitual drunkenness for three years be defined in an action for divorce? Since the days of Noah drunkenness has existed in the world. It has come down to us through the ages and generations of men. It is called an appetite that by frequent indulgence will become a habit, and when it becomes once a habit, and the habit of intoxication continues for three years, it is a ground for a divorce.

I find that the court in the case of *McBee* v. *McBee*, 22 Or., 329, has collected a large number of opinions on this subject. The opinion reads:

"Bouvier defines an habitual drunkard to be a 'person given to inebriety, or the excessive use of intoxicating drinks, who has lost the power' or will, by frequent indulgence, to control his appetite for it.' Habitual drunkenness,' said Harrison, J., 'or the degree or the course of intemperance that amount to it,' can not be exactly defined. We may, however, say, in general terms, that one is addicted to habitual drunkenness who has a fixed habit of frequently getting drunk, and he may so addicted,

though he may not oftener be drunk than sober, and he may be sober for weeks.  *Brown* v. *Brown*, 38 Ark., 328.

"  'Occasional acts of drunkenness do not make one an habitual drunkard.  Nor is it necessary that he should be continually in an intoxicated state.  A man may be an habitual drunkard and yet be sober for days and weeks together.  The rule is, has he a fixed habit of drunkenness?'  (*Ludwig* v. *Commonwealth*, 18 Pa. St., 172).  'He is an habitual drunkard,' says the court in *Commonwealth* v. *Whitney*, 71 Mass. (5 Gray), 85, 'whose habit is to get drunk; whose inebriety has become habitual.'  Poland, J., said:  'The fair definition of habitual drunkard, as used in the statute, we suppose to be, one who is in the habit of getting drunk, or who commonly or frequently is drunk; and we do not suppose it necessary, to satisfy those terms, that a man should be constantly or universally drunk (*State* v. *Pratt*, 34 Vt., 323).  It is held in *Magahay* v. *Magahay*, 35 Mich., 210, that one who has the habit of indulging in intoxicating liquors so firmly fixed that he becomes intoxicated as often as the temptation is presented by his being in the vicinity where liquor is sold, is an habitual drunkard within the meaning of the divorce law.  In *Walton* v. *Walton*, 34 Kan., 195, it is said that a man who drinks to excess may be an habitual drunkard within the meaning of the divorce laws, although there are intervals when he refrains entirely from the use of intoxicating drinks.  'But,' the court adds, 'before he can be regarded as an habitual drunkard, it must appear that he drinks to excess so frequently as to become a fixed practice or habit within him.'  In *Murphy* v. *People*, 90 Ill., 59, it was held that a person who is in the habit of getting intoxicated is one who has the involuntary tendency to become intoxicated, which is acquired by frequent repetition.  'The charge of habitual intemperance,' says Harrison, J., 'evidently can only refer to a persistent habit of becoming intoxicated from the use of strong drinks, thus rendering his presence in the marital relation disgusting and intolerable' (*Burns* v. *Burns*, 13 Fla., 376).  And, Watkins, J., defined it thus:  'It means the custom or habit of getting drunk; the constant indulgence in such stimulants as wine, brandy, and whiskey, whereby intoxication is produced; not the ordinary use, but the habitual abuse of them.  The habit should be actual or confirmed.  It may be intermittent.  It need not be continuous, or even of daily occurrence.  *Mack* v. *Handy*, 39 La. Ann., 497.

"From these definitions, there must be frequent and regular recurrence of excessive indulgence in intoxicating drinks to constitute an habitual drunkard.  It is not necessary that he should drink liquors to excess, and become intoxicated every day, or

even every week, but there must be such frequent repetition of excessive indulgence as to engender a fixed habit of drunkenness. Occasional acts of intoxication are not sufficient to make one an habitual drunkard; there must be the involuntary tendency to become intoxicated as often as the temptation is presented, which comes from a fixed habit acquired from frequent and excessive indulgence. The man is reduced to that pitable condition in which he either makes no vigorous effort to resist and overcome the habit, or his will has become so enfeebled by the indulgence that resistance is impossible.' There is generated in him, by frequent and excessive indulgence. a fixed habit of drunkness which he is liable to exhibit at any time when the opportunity is afforded. He is an habitual drunkard because he is commonly or frequently in the habit of getting drunk, although he may not always be so. When a man has reached such a state if demoralization that his inebriety has become habitual, its effect upon his character and conduct is to disqualify him from properly attending to his business, and if he be married. to render his presence in the marriage relation disgusting and intolerable, especially if he be an 'habitual gross drunkard.' as declared by our statutes. 'The reason why the law makes habitual drunkenness a ground for divorce is not alone because it disqualifies the husband or wife from attending to business. but in part, if not mainly, because it renders the person addicted thereto unfit for the duties of the marital relation, and disqualifies such person from properly rearing and caring for the children born of the marriage.' *Richards* v. *Richards,* 19 Brad., 469."

The defendant in this case is anxious to care for his two small children, and desires to live with his wife and family. He will do more for his children than an entire stranger, and a court should be very reluctant in granting a divorce where there are small children.

Quoting from the opinion of the court in the case of *Shutt* v. *Shutt,* 71 Md., 193:

"In this state it has been repeatedly declared that the marriage relation is not to be disturbed for any but the gravest reasons, and only upon such state of facts as show to the entire satisfaction of the court that it is impossible that the duties of the married life can be discharged. Public policy and morality alike condemn these judicial separations of husband and wife, except where it can not be avoided."

So, the court finds, in this case, that the defendant is not an habitual drunkard, and never has been.  His appearance does not indicate it, and the evidence wholly fails to establish this fact.

The petition for divorce is dismissed, and the defendant is ordered to pay five dollars a week for the support of his two children until such time as he and his wife can agree and live together.

By the law of Ohio he is the head of the family and is entitled to the custody of his children.