JOHN BURNS, APPELLANT, VS. JANE BURNS, APPELLEE.

1. A statement in a bill for divorce that the complainant is, and has been for more than two years a resident of this State; that the parties were married at Jacksonville, in this State, in April, 1862, "where the parties have ever since lived," is a full compliance, as to the pleadings, with the statute, which requires that "it shall appear that such applicant has resided in the State of Florida for the space of two years prior to the term of such application," and is a sufficient allegation of the time of marriage.

2. Where a divorce is prayed on the ground that the defendant "is habitually intemperate," it is not necessary to specify more definitely the facts constituting "habitual intemperance," the charge of itself implying that the defendant has a persistent habit of becoming intoxicated from the use of strong drinks, and thus rendering his presence in the marital relation disgusting and intolerable.

3. Where the charge in a bill for divorce is that the defendant "habitually indulges in violent and ungovernable temper, and is extremely cruel to his wife," and proceeds to specify that he uses threatening, plasphemous and abusive language towards her, on many occasions threatened her with fatal violence, and attempted to carry his threats into execution, so that she has had to seek safety in flight; and in an amended bill reiterating these charges, it is alleged that the defendant has put and continues to keep complainant in fear of bodily harm from his violence and abuse: *Held*, That the defendant having taken direct issue upon these statements, and proceeded to a final hearing without requiring a more definite specification of facts, and the allegations appearing to be sufficiently definite to apprise the defendant of the nature of the facts to be proved in order to enable him to prepare his defence, and it appearing that the proofs fully substantiate the charge, a decree of divorce will be sustained.

4. In civil writs, generally, presumptive evidence, as distinguished from direct evidence of marriage, is, *prima facie*, sufficient, as where a man and woman have cohabitated together, speaking habitually to and of each other as husband and wife, and of the time and circumstances of their marriage, and the like; but in suits where criminal conversation, adultery, &c., constitute the essence or foundation of the action, a more rigid rule is required.

This is an appeal from a decree rendered in the Circuit Court for Duval county.

The bill charges that complainant is, and has been for more than two years, a resident of this State; that she and defendant, John Burns, intermarried in 1862 at Jacksonville, in said State, where the marriage was solemnized according to law, and "where the parties have ever since lived;" that defendant "habitually indulges in violent and ungovernable temper, and is extremely cruel to his wife;" that he is "habitually intemperate;" that he has used threatening, blasphemous and abusive language toward her on many occasions, and threatened her with fatal violence, and attempted to carry his threats into execution, so that she has had to seek safety in flight.

The amended bill further says that the defendant put and continues to keep complainant "in fear of bodily harm from his violence and abuse."

The defendant's answer expressly denies each charge made in the complaint, except that the parties were married, and charges that all the allegations "are a tissue of falsehoods and entirely fabricated;" that he and the complainant lived happily together as husband and wife from the time of their marriage to about July, 1867, and then details a long history of matters which have little bearing upon the case, except to show that a state of rare conjugal infelicity existed between the parties.

On consideration of the testimony, the Circuit Court decreed a dissolution of the marriage on account of the "habitual

indulgence by the defendant in violent and ungovernable temper," and "habitual intemperance."

From this decree the defendant appeals.

*H. Bisbee, Jr.*, for Appellant, with whom were *D. C. Dawkins* and *J. B. C. Drew.*

*H. Bisbee, Jr.*, for Appellant.

1. The allegation of two years' residence is not in compliance with the statute. 12 Fla., 449, 450, 451, 466. This allegation must be so framed as to leave no room for construction or inference to the contrary. Ib., 451.

2. Date of marriage is not alleged with sufficient certainty. Ib., 465–466.

3. The allegation of the grounds of divorce, in the language of the statute, is not sufficient. The facts, or some of them, which, when proven, constitute said grounds, must be specified in the bill. Unless this is done, no amount of evidence will justify a decree. 2 Bish., 651, 652, 653, 654, 657, 658, 684, 685. All of these sections are directly to the point. Also 12 Fla., 449, 452, 453, 454.

The opinion of the court in this case settles the principle to be as above stated, which opinion cites the following authorities: 4 Wis., 135; 16 N. J., 391; 4 Iowa, 325; 27 Me., 563; 2 Paige, 112.

The same doctrine is enforced in 2 Dev. & Battle's Rep., 377, 387; ib., 64, and note on p. 77; also, in 2 Ire. Law Rep., 484.

4. The bill does not allege the habitual indulgence of a violent and ungovernable temper *towards complainant*, which is essential. 12 Fla., 452. There is no evidence to support the allegation of marriage. An actual marriage must be proven as alleged. 2 Bish., secs. 262, note 4, 263, 274, 270, 275, 253, 266. Admissions of marriage by the parties insufficient. 2 Bish., 240, 241, 242.

5. The charge of the habitual indulgence of a violent and ungovernable temper is not sustained by the evidence.

If this ground for divorce means the same as extreme cruelty, and requires as strong evidence to sustain it, then the evidence does not sustain it in the opinion of the court below, nor according to the following authorities. Courts cannot interfere unless personal violence is shown, with a reasonable apprehension of a repetition of the same, or a reasonable apprehension of violence. 1 Bish., sec. 720, 743; ib., sec. 720.

6. The grounds to justify a divorce must be grave and weighty. 1 Bish., sec. 720, 743; ib., 720. The decree should be based upon the general character of defendant, rather than upon particular acts. 2 Bish., sec. 653, note. A single act of gross cruelty may be sufficient to authorize a divorce where it is shown that the defendant's general character is bad, and *the wife is in great danger*, but not where a husband's general character is good and there are only occasional sallies of passion. 1 Bish., sec. 746, 740; ib., sec. 747, 748, 720; 12 Fla., 440, 441. If what is complained is the result of complainant's own misconduct, she cannot complain with effect. 1 Bish., sec. 764, 767, 768.

7. That habitual indulgence in a violent and ungovernable temper is not proved, but only occasionally in a period of several years, and when provoked by complainant.

8. Habitual intemperance, to justify divorce, must be such as to incapacitate the party from attending to business. 1 Bish., sec. 813.

The testimony of complainant's son is unreliable, and should be cautiously received. The same remark will apply to Callahan's testimony respecting defendant's habits. He is contradicted by eight witnesses, which clearly proves his testimony false touching defendant's habits, and this throws discredit upon all his testimony, on the principle that "*falsus in uno, falsus in omnibus.*"

The general statements of witnesses respecting defendant's

character are not sufficient. They must state facts from which the court is to judge of the conduct.

*Sanderson & L'Engle*, for Respondent.

Let us apply the testimony as given by the record, to the law as laid down in all judicial cases.

Does the evidence establish cruelty—that is legal cruelty—sufficient to authorize a decree of divorce? Legal cruelty is defined thus: " Cruelty is such conduct in one of the parties as renders further cohabitation dangerous to the physical safety of the other, or creates in the other such reasonable apprehensions of bodily harm as materially to interfere with the discharge of marital duty." Bish. on Marriage and Divorce, Vol. 1, sec. 715 ; or as in, sec. 717.

In sec. 718, the learned author says : " In respect to cruelty, the words of the statute differ in the different States, but in legal import they are substantially the same. Thus the several phrases, cruel, inhuman and barbarous treatment, ' extreme cruelty,' or ' cruel and inhuman treatment,' or such conduct on the part of the husband towards his wife as renders it *unsafe* and improper for her to cohabit with him, &c.," are severally construed to mean substantially the same. Apply the facts to this definition, and they will clearly establish the extreme cruelty required by our statute.

1st. Mrs. Burns' own testimony shows abusive and violent language, accompanied by threats to kill—on one occasion a blow, flying from her house for safety, shaking a whip over her head, and running from him, taking refuge in her kitchen and the streets.

The testimony of Mrs. Albin, shows that she feared for the life of Mrs. Burns, called her into her room and sent for her husband.

That violence actually executed is not necessary is firmly established as any principle of law can be. 1 Bish., sec. 730. And where words of menace are the grounds of the suit.

they need not be addressed to the wife. The test is, whether they excite a reasonable apprehension of bodily harm. Lord Stowell has observed, " They carry with them something of additional strength if they raise apprehension in others, for that shows that the wife was not alarmed upon any unreasonable grounds." Cited from the latter part of sec. 732, 1 Bishop.

Sir William Scott in Evans vs. Evans, says : " That if austerity of temper, petulance of manners, *rudeness* of *language*, a want of civil attention, occasional sallies of passion, do *threaten bodily harm*, they amount to legal cruelty. 1 Bish. sec. 732.

If the passions of the husband are so much out of his control as that it is inconsistent with the personal safety for the wife to continue in his society, it is immaterial from what provocation such violence originated. 1 Bish., sec. 734.

When a husband ill treats a child or other relation of her's, for the purpose of harrassing his wife, it is cruelty. Section 736, 1 Bish.

All the circumstances, viz : Drunkenness, treatment of child, cruelty to mule and cow, breaking dishes in dining room, may be taken together in connection with his threats of personal violence, as the evidence of ungovernable temper, and as showing that complainant had good reason to apprehend bodily harm, which will justify under our statute a decree of Divorce for extreme cruelty.

There have been many acts established by the evidence, but the law does not require many acts. Sec. 744, 1 Bish.

There has been no misconduct shown on the part of the wife by any of the witnesses ; even Burns himself says she was kind in his sickness. The weight of evidence is that she did not reply when she was cursed and abused by him— she assigns the reason that she was afraid.

The rule governing this class of cases is based upon the proposition, that a divorce is granted rather to prevent danger apprehended, than to punish what is already done. 1

Bish., sec. 747, 480.   Hence it follows that all the circum-
stances together must be taken into consideration.   The
question is not whether this or that fact alleged would au-
thorize the court to pronounce a divorce, but whether all the
facts combined *ought* to lead to *that result.*

Take then the intemperance, the violent temper, abusive
language, threats of personal violence, threats to kill, caus-
ing wife to flee for safety, refusing to contribute to support
of wife, and in one instance, giving her a blow on the throat;
all these continuing through a series of two or three years,
constantly increasing in frequency and violence, certainly
cannot fail to produce on the mind of the court that legal
cruelty, required by our statute, and to constrain it to grant
a decree of divorce.

The appellant's counsel having assumed the position that
the divorce should not be granted because the proof of mar-
riage was not made, we contend that the admissions of
the defendant in his answer, and his own testimony, estab-
lish the marriage with sufficient clearness.

In Bishop on Marriage and Divorce, the learned author
says :   " It is obvious that no witness, especially no non-pro-
fessional witness can better know whether a fact of marriage
has transpired between the parties than the parties themselves.
Therefore, a deliberate admission or confession of such a fact,
be the fact confessed to a marriage at home or in a foreign
country, is competent evidence against a party.   1 Bish. on
Mar. and Div., 497 ; 3 Rich., 434 ; 1 Bish. on Mar. and Div.,
secs. 13, 457-8 ; 2 Ib., sec. 268, citing 20 Ala., 168 ; 6 Tex-
as, 3 ; 3 Ind., 76 ; 16 Ill., 85 ; 1 Greenl. on Ev., sec. 107 ;
2 Ib., 462 ; 4 McCord, 256.

RANDALL, C. J., delivered the opinion of the Court.

The petition of appeal states several grounds upon which
the defendant seeks to avoid the decree, and we proceed to
examine them *seriatim.*

1. " That complainant's allegation of his past residence is not in compliance with law."

The statement in the bill is, that " the complainant is, and has been for more than two years a resident of this State," that the parties were married at Jacksonville in this State, according to law, in April, 1862, " *where the parties have ever since lived.*"

The statute says that " no divorce shall be granted to any applicant unless it shall appear that such applicant has resided in the State of Florida for the space of two years prior to the time of such application." Laws 1852, chap. 522.

It is not apparent that the complainant could by the use of any other form of words, have stated more positively than she has done, that she has resided in this State for the space of two years prior to time of filing her bill. It is further urged, " That the date of the marriage is not alleged with sufficient certainty."

It would be trifling to expend any time or words upon this proposition.

2. " That the allegations in the bill of the statutory grounds of divorce, without alleging specific facts to constitute said grounds, are insufficient to sustain a decree ;" and 3, " That one of the grounds upon which said decree is based, to-wit: the habitual indulgence of a violent and un_governable temper, is defectively alleged, in this, that it is not alleged that the violent and ungovernable temper was indulged in toward the complainant."

It might be deemed a waste of words to specify under the charge of " habitual intemperance" any series of facts in order to make this charge more definite. The charge of " habitual intemperance," in the language of the statute, evidently can only refer to a persistent habit of becoming intoxicated from the use of strong drinks, thus rendering his presence in the marital relation disgusting and intolerable. It would not be more definite and certain if it were charged that the defendant drank intoxicating liquors " on the first

day, and on the second day, and on the third day," and so on upon each day of each month, or on alternate days from month to month, the general charge of necessity implying the specific facts.

After alleging that "the defendant habitually indulges in violent and ungovernable temper, and is extremely cruel to his wife, this complainant," she defines these charges by further stating, "that he has used threatening, blasphemous and abusive language toward your oratrix on many occasions, and threatened her with fatal violence, and attempted to carry his threat into execution, so that your oratrix has had to seek safety in flight;" and further, in her amended bill, that the "defendant has put and continues to keep your oratrix in fear of bodily harm from his violence and abuse." Thus the complainant has given a statement of conduct on the part of the defendant toward her which apprises him of the nature of the charge, and of the facts which she intends to show by proof to sustain it. It is a series of acts and continued conduct on his part toward her. If she were to allege definite days or weeks, on and during which such acts were committed, she would not in her proofs be confined to the precise time alleged, and under the specifications given, the defendant would be sufficiently apprised to enable him to prepare his defence.

In a case in Alabama, it was alleged by the wife "that her husband soon after their marriage commenced treating her, and did treat her with cruelty and inhumanity. That on various occasions he has inflicted blows upon her in anger and with much violence, thereby endangering her health and life. That he has refused to supply her with the necessaries and comforts of life, when it was in his power to have supplied her with them; that he still persists in this course of treatment towards her, and that she cannot with any degree of comfort or safety continue to live with him." On demurrer, the court say : " The case made by the bill is

a case of marital tyranny ; of deliberate, unmanly and con-
tinuous cruelty." * * "We think the acts of cruelty are
sufficiently alleged, and that there was no necessity for
greater particularity in alleging the time, when, and the
place where the cruelty occurred." * * "Any conduct on
the part of the husband which furnishes reasonable appre-
hension that the continuance of the cohabitation would be
attended with bodily harm to the wife, is legal cruelty to
her." Smedley vs. Smedley, 30 Ala., 714. We have found
no statute of any other State giving a right to sue for a di-
vorce for the cause and in the precise language of our own,
viz : for the "habitual indulgence of violent and ungovern-
able temper," and therefore we find no adjudication upon
the question whether under such a charge it is necessary to
allege any facts generally, or specifically, beyond those im-
plied or included in the charge itself.

In the nature of this charge against a defendant a sa ground
of divorce, it is certainly practicable to set forth facts relating
to the conduct of a party, which will show whether he in-
dulged in a *violent* and ungovernable temper, and a defendant
may be interested in knowing, for the purpose of preparing
his defence, what are the facts or the particular nature of
the facts which the complaining party intends to prove. It
is unnecessary to set out all the acts and circumstances in
detail, but it is necessary to give enough of them to indicate
the character of the case sought to be made, in order that
the court may judge whether, the facts being proved, they
will support the general charge.

Applying this rule to the present case, has the complain-
ant alleged generally or specifically such facts regarding the
defendant's conduct toward her as to warrant the conclusion
that he was guilty of the habitual indulgence of violent and
ungovernable temper ? It is true that the statement of facts
is extremely meagre, but it is still a statement of facts, and
exhibits the character of the proof intended to be adduced
in support of the charge. If the use on many occasions of

threatening, blasphemous and abusive language, threatening complainant with fatal violence, and attempting to carry such threats into execution and compelling her to seek safety in flight, and the subsequent statements in the amended bill, (filed some months after the filing of the original bill,) are that the defendant continued to keep the complainant in bodily fear on account of his violence and abuse, be not a statement of facts, (however meagre,) we are unable to distinguish between facts and conclusions. The defendant neither demurs, nor makes any attempt to obtain a more full and specific statement of distinct facts, nor to arrest the progress of the suit, but takes issue upon the facts as stated, and the cause proceeded, at the expense of much time and money, to the taking of a mass of testimony upon each issue and a final hearing and decree. If the brief statement of the facts regarding the defendant's conduct do not amount to a charge of extreme cruelty, it is conceived that they at the least show that the habitual temper of the defendant was violent and ungovernable. That it was *violent*, is too apparent for question. If it was not " *ungovernable*," it was at least willful, malicious, and cruel. It is a charitable construction to infer that the conduct alleged was the ebullition of an ungovernable temper, and if the charges are true, they " furnish reasonable apprehension that the continuance of the cohabitation of the parties would be attended with bodily harm to the wife," and that the marital relation ought to cease.

The 4th ground of error is, " that there is not sufficient evidence of marriage to sustain the decree."

The bill alleges a marriage; the answer admits in various forms of language that the parties were married. The complainant in her testimony states that she was married to the defendant, and mentioned the time, and that she has resided in this State between sixteen and seventeen years. The defendant swears that the complainant owned property in Jacksonville " at the time of my marriage with complain-

ant," and repeatedly alluded to her as his wife, and to the time they were married.   One witness (Mitchell) states that he was a frequent visitor at complainant's house before her marriage, and " was at her house the night they were married."   Nearly all the witnesses prove cohabitation, and that they lived together in this State during the entire period from the marriage to the time of separation, and spoke of each other as " husband" and " wife."   Under the rules referred to in Bishop on Marriage and Divorce, and the decisions of the courts of various States, this proof of the marriage, for the purposes of a civil suit, is ample, for we have not only the testimony of both parties to the fact that they were married, but also the testimony of several witnesses that the parties invariably spoke of each other as husband and wife, and that they cohabited as such.   " When parties are living together as husband and wife, the legal presumption, favoring innocence, is, that they are persons married to one another, and not persons living in the violation of morality, and decency, and law.   But when the issue to be decided in the case is such as to show that the one against whom it is decided had violated morality, and decency, and law, if the other party were married to a third person, then no presumption of such marriage can arise simply from cohabitation as husband and wife."   " In prosecutions for criminal conversation, and upon an indictment for adultery, there must be direct evidence of the marriage, in distinction from presumptive evidence."   2 Bishop on Mar. and Div., 272, 275.

The 5th, 6th and 7th grounds urged are, that the testimony does not sustain the allegation of habitual indulgence of a violent and ungovernable temper toward the complainant, or of the habitual intemperance of the defendant.

It is sufficient for the purposes of this appeal to remark that we have examined carefully all the testimony in the case, and the conclusion is, that the proofs fully sustain these charges.   There is some conflict in the testimony, but not of such a character as to lead to any other conclusion.   The

testimony of the defendant generally contradicts everything sworn to by the complainant upon these points, and our judgment is founded upon the testimony of the other witnesses. Upon this testimony, we think any fair jury would find that the charges in the bill are true as found by the Circuit Judge.

The decree is affirmed with costs.