[Filed April 30, 1892.]

## CAROLINE McBEE *v.* WILLIAM McBEE.

DIVORCE—HABITUAL GROSS DRUNKENNESS.—Occasional acts of intoxication are not sufficient to make one an habitual drunkard; there must be the involuntary tendency to become intoxicated as often as the temptation is presented, which comes from fixed habit acquired from frequent and excessive indulgence.

Douglas county: M. L. PIPES, Judge.

Defendant appeals. Reversed.

*J. C. Fullerton*, for Appellant.

*Wm. R. Willis*, for Respondent.

LORD, J.—This is a suit in equity brought by the plaintiff against the defendant, her husband, to obtain a divorce. The only cause for divorce alleged in her complaint is habitual gross drunkenness contracted since the marriage and continuing for one year prior to the commencement of this suit. There are other allegations as to the real prop-

erty owned by the defendant, but to which further reference
is unnecessary. The answer of the defendant denies the
allegation of habitual gross drunkenness and all other alle-
gations in reference thereto. The cause was referred to a
referee, the testimony reduced to writing and reported to
the court, whereupon the court made a decree granting
a divorce to the plaintiff and awarding her one-third of the
real property of the defendant.

The only question in this case is, whether the defendant
is an habitual gross drunkard. Our statute provides as a
cause for divorce: " Habitual gross drunkenness contracted
since marriage and continuing for one year prior to the
commencement of the suit." (Hill's Code, § 495, sub. 4.)
The testimony of the plaintiff is to the effect that the defend-
ant has drunk to excess and intoxication latterly, when he
came to town, which would average twice a month. She
says: " He might not get so drunk every time he came to
town, but pretty nigh it"; but "he sobered up quick; hardly
ever brought liquor home with him, but sometimes he did;
during the hop-picking time they had liquor there." When
asked whether he had been under the influence of liquor
to such an extent for the last two or three years as to dis-
qualify him in any way to perform the work about the
farm, she answered: " No; it was mostly when he came to
town that he got intoxicated." There is other evidence
corroborative of these statements, and other evidence for
the defendant in conflict with it. It appears that since their
marriage in 1880, they have lived upon his farm, which is
some four or five miles from Roseburg; that she had four
children by a former marriage, whom he has supported, and
that there are now two other children, the fruit of the pres-
ent marriage. The town of Roseburg is the only place in
the vicinity of his farm where liquor is kept for sale. While
the plaintiff puts the average of his visits to Roseburg at
twice a month, the testimony shows that sometimes he did
not go there for an interval of a month, sometimes oftener,

or once a week; but these visits were not made specially for the purpose of procuring liquor, or of drinking to excess or intoxication. When he had any business which called him to Roseburg, he would generally indulge in intoxicating drinks, and sometimes to excess; and on one occasion he got so drunk as to fall from his wagon, although he gives another version to the affair. There is some testimony of his neighbors to the effect that he is not a drunkard, and does not have the reputation of being one in the community in which he lives. Mr. Josephson and Mr. Simon Caro, both merchants of Roseburg, testify that they have known him for twelve to fifteen years, and that they have traded and done business with him, and met him nearly every time he came to town; that they had never seen him drunk; and that if he had been an habitual drunkard, or had had such a reputation, they would have observed and known it. This testimony is hardly to be classed as merely negative. It is not simply to the effect that they had not seen him in a state of intoxication, but it goes farther and shows that with their opportunities for observing his habits, he could not have got drunk every time he came to town, or been so habituated or confirmed in the habit, without their knowing it.

What constitutes habitual gross drunkenness sufficient to warrant a divorce, has not been defined in any adjudicated case in this state. In other statutes, the language is "habitual drunkenness," or "habitual intemperance," but our statute adds the word gross as if something more were intended or denoted. Bouvier defines an habitual drunkard to be a "person given to inebriety, or the excessive use of intoxicating drinks, who has lost the power or will, by frequent indulgence, to control his appetite for it." "Habitual drunkenness," said Harrison, J., "or the degree, or the course of intemperance that amounts to it, cannot be exactly defined. We may, however, say in general terms, that one is addicted to habitual drunkenness

who has a fixed habit of frequently getting drunk, and he may be so addicted, though he may not oftener be drunk than sober, and he may be sober for weeks." (*Brown* v. *Brown*, 38 Ark. 328.) "Occasional acts of drunkenness do not make one an habitual drunkard. Nor is it necessary that he should be continually in an intoxicated state. A man may be an habitual drunkard and yet be sober for days and weeks together. The rule is, has he a fixed habit of drunkenness." (*Ludwick* v. *Comw.* 18 Pa. St. 172.) "He is an habitual drunkard," says the court in *Comw.* v. *Whitney*, 5 Gray, 85, "whose habit is to get drunk; whose inebrity has become habitual." Poland, J., said: "The fair definition of habitual drunkard as used in the statute, we suppose to be 'one who is in the habit of getting drunk or who commonly or frequently is drunk,' and we do not suppose it necessary to satisfy those terms that a man should be constantly or universally drunk." (*State* v. *Pratt*, 34 Vt. 323.) It is held in *Magahay* v. *Magahay*, 35 Mich. 210, that one who has the habit of indulging in intoxicating liquors so firmly fixed that he becomes intoxicated as often as the temptation is presented by his being in the vicinity where liquor is sold, is an habitual drunkard within the meaning of the divorce law. In *Walton* v. *Walton*, 34 Kas. 195, it is said that a man who drinks to excess may be an habitual drunkard within the meaning of the divorce laws, although there are intervals when he refrains entirely from the use of intoxicating drinks. "But," the court adds, "before he can be regarded as an habitual drunkard, it must appear that he drinks to excess so frequently as to become a fixed practice or habit within him." In *Murphy* v. *People*, 90 Ill. 59, it was held that a person who is in the habit of getting intoxicated is one who has the involuntary tendency to become intoxicated, which is acquired by frequent repetition. "The charge of habitual intemperance," says Harrison, J., "evidently can only refer to a persistent habit of becoming intoxicated from the use of

strong drinks, thus rendering his presence in the marital relation disgusting and intolerable." (*Burns* v. *Burns*, 13 Fla. 376.) And Watkins, J., defined it thus: "It means the custom or habit of getting drunk; the constant indulgence in such stimulants, as wine, brandy, and whisky, whereby intoxication is produced; not the ordinary use, but the habitual abuse of them. The habit should be actual or confirmed. It may be intermittent. It need not be continuous, or even of daily occurrence." (*Mack* v. *Handy*, 39 La. An. 497.)

From these definitions, there must be frequent and regular recurrence of excessive indulgence in intoxicating drinks, to constitute an habitual drunkard. It is not necessary that he should drink liquors to excess, and become intoxicated every day, or even every week, but there must be such frequent repetition of excessive indulgence as to engender a fixed habit of drunkenness. Occasional acts of intoxication are not sufficient to make one an habitual drunkard; there must be the involuntary tendency to become intoxicated as often as the temptation is presented, which comes from a fixed habit acquired from frequent and excessive indulgence. The man is reduced to that pitiable condition in which "he either makes no vigorous effort to resist and overcome the habit, or his will has become so enfeebled by the indulgence that resistance is impossible." There is generated in him, by frequent and excessive indulgence, a fixed habit of drunkenness, which he is liable to exhibit at any time when the opportunity is afforded. He is an habitual drunkard because he is commonly or frequently in the habit of getting drunk, although he may not always be so. When a man has reached such a state of demoralization that his inebriety has become habitual, its effect upon his character and conduct is to disqualify him from properly attending to his business, and if he be married, to render his presence in the marriage relation disgusting and intolerable, especially if he

be an "habitual gross drunkard," as declared by our statute. "The reason why the law makes habitual drunkenness a ground for divorce, is not alone because it disqualifies the husband or wife from attending to business, but, in part, if not mainly, because it renders the person addicted thereto unfit for the duties of the marital relation, and disqualifies such person from properly rearing and caring for the children born of the marriage." (*Richards* v. *Richards,* 19 Brad. 469.)

In view of these considerations, it does not seem to us that the testimony would justify us in declaring that the defendant is so addicted to the habit of intoxication as to be an habitual drunkard. In all the years there are only a few occasions, according to the version of the testimony against him, when he was grossly drunk, and when his conduct was improper and unbecoming. The testimony does not indicate the confirmed habit of drinking to excess; he only drank when he happened to come to town, which was generally on business, and then not always to excess, and sometimes, the evidence indicates, not at all; or if so, not indicated by his conduct, or demeanor. He seldom carried liquor to his home, and, with the exceptional instances stated, was a sober man in his family and about his home. While we would feel no hesitation in dissolving the marriage contract when one of the parties was addicted to "habitual gross drunkenness," we ought not to lend our aid to effect a separation, especially when there is issue of the marriage, unless fully satisfied by the testimony, viewed as a whole, that the defendant was an habitual gross drunkard.

In view of these considerations, we think the decree must be reversed, the defendant paying all costs and disbursements.