ETHEL MATHENY, Appellee, v. SAM MATHENY, Appellant.

**DIVORCE:** Habitual Drunkenness—Adultery—Evidence. Evidence held
*sufficient* to establish plaintiff's charge of habitual drunkenness and
*insufficient* to establish defendant's recriminatory charge of adultery.

*Appeal from Polk District Court.*—HUBERT UTTERBACK, Judge.

APRIL 6, 1921.

ACTION for divorce. Decree for plaintiff. Defendant appeals.
—*Affirmed.*

*Holly & Holly,* for appellant.

*Brammer, Seevers & Hurlburt,* for appellee.

STEVENS, J.—Plaintiff alleged in her petition, as grounds for
divorce, cruel and inhuman treatment such as to endanger her
life, habitual drunkenness, and adultery.   The defendant, as a
recriminatory charge against plaintiff, alleged that she com-
mitted repeated acts of adultery with a person named in the
evidence as Oss Miley.   The parties were married May 19, 1911,
and separated finally on October 6, 1915.   The court below
awarded plaintiff a divorce upon the ground that the defendant
had, since the marriage, become an habitual drunkard.   The evi-
dence upon this point referred to the conduct of the defendant
after business hours.   He was a painter by trade, and, accord-
ing to the testimony of W. M. Schrieber, by whom he was em-
ployed for several years before and after the marriage, was a
good worker, and manifested no symptoms of intoxication dur-
ing the period of his employment.   Habitual drunkenness, within
the meaning of the statute, may exist, although the party charged
may remain sober during business hours.   *Wheeler v. Wheeler,*
53 Iowa 511; *Bill v. Bill,* 178 Iowa 1025.

Plaintiff testified that the defendant was frequently intoxi-
cated at night.   Her testimony is corroborated by that of some of

her friends. The defendant denied the charges of drunkenness during the time the parties resided together, but admitted that, for a period after the separation, he drank heavily. He gave as a reason therefor that he wanted to drown his sorrow caused by his wife's leaving him. He did, however, admit that, upon one occasion, he was drunk during the day, and that his wife put him to bed. It will serve no good purpose to recite the evidence upon this point in detail, or to discuss the other grounds alleged. We content ourselves with saying that a careful review of the record satisfies us that the charges of habitual drunkenness are sustained by the evidence.

The testimony introduced by the defendant to sustain the recriminatory charges of adultery was, in substance, that, on January 19th, and again on January 29, 1918, plaintiff stayed over night at a hotel in Centerville with Oss Miley, who registered her name as Ethel Moore, which was plaintiff's maiden name. The leaves of the hotel register were introduced in evidence. No other evidence as to the occurrence on January 19th was offered, but the hotel clerk testified that he saw Miley write the names on the hotel register; that plaintiff was with him; that he assigned her to a room on the second, and Miley to a room on the third, floor of the hotel; that, during the night, while concealed in an adjoining room, he discovered Miley in plaintiff's room; that he saw the parties through the transom, and saw them in the act of having sexual intercourse; that he went to the room and ordered Miley out; that he then had some conversation with plaintiff, touching her conduct; that he went to Miley"s room, where the matter was talked over between them; and that later a policeman was called, who also talked with Miley. The testimony of the policeman who saw Miley and the clerk only corroborates that of the hotel clerk. Plaintiff denied that she was ever in Centerville, or that she stayed at a hotel in a room visited by Miley. Her testimony to this effect is corroborated to some extent by the testimony of her father.

The hotel clerk further testified that he never saw plaintiff, except upon the above occasion, and that he did not see the parties leave the hotel the following morning. No other testimony, except certain suspicions on the part of the defendant, tending to show immoral conduct upon plaintiff's part was intro-

duced. Miley appears to have been at one time the suitor of plaintiff's sister. Plaintiff occasionally went to his residence, to visit a lady friend employed by him. The proof of the charge of adultery against the plaintiff rests largely upon the identification of her by the hotel clerk. The doctrine of recrimination has been approved by this court. *Dupont v. Dupont,* 10 Iowa 112; *Wilson v. Wilson,* 40 Iowa 230; *Pierce v. Pierce,* 33 Iowa 238.

It will be observed that the acts charged occurred nearly three years after the separation of the parties, and the trial was had approximately a year later. In view of the almost total absence of other evidence tending to show plaintiff to be a woman of immoral character, we are not convinced that the hotel clerk may not have been mistaken in his identification of the person who accompanied Miley to the hotel. Possibly some slight corroboration is furnished by the fact that the name written on the hotel register corresponds with the maiden name of plaintiff; but, if her testimony is at all credible, she was not in any way responsible therefor. While the testimony may not be wholly free from doubt upon this point, we reach the conclusion that the preponderance thereof sustains plaintiff's claim that she was not in Centerville, and did not receive Miley in her room, as charged. No other question is raised by the record. It follows that the decree of the court below must be and is— *Affirmed.*

EVANS, C. J., ARTHUR and FAVILLE, JJ., concur.