MAZIE L. LEONARD, Appellee, v. F. S. LEONARD, Appellant.

No. 42902.

April 7, 1936.

Hogan & Less, and John J. Kintzinger, for appellant.

M. H. Czizek, for appellee.

MITCHELL, J.—Mazie L. Leonard commenced an action on October 4, 1933, against her husband, Dr. F. S. Leonard, praying that she might be granted a decree of separate maintenance on the grounds that her husband was guilty of cruel and inhuman treatment, and that she be awarded the care and custody of her minor children, alimony, suit money, and attorney's fees, and for such other equitable relief as might seem proper to the court.

To the petition an answer was filed, admitting certain paragraphs of the petition, but denying that he had been guilty of cruel and inhuman treatment as claimed by the plaintiff. Later on an amendment was filed to the answer, in which Dr. Leonard set up by way of recrimination that plaintiff after marriage became addicted to the excessive use of intoxicating liquors.

A trial was had. Evidence was offered, and the lower court entered a decree as prayed for by plaintiff, for separate maintenance, and awarded her the custody and control of the minor children, subject to the right of the father to visit the minor children at reasonable times and places other than the home. Judgment was entered for alimony, suit money, and attorney's fees.

Being dissatisfied with this judgment, Dr. Leonard has appealed to this court.

This is one of those unfortunate cases which involve the home life of a man and wife and five children. The appellee is 47 years of age and appellant 52. They were married in Dubuque, Iowa, on September 2, 1908. Six children were born to this union; one of them dying when a mere infant. The oldest son is studying medicine; and the oldest daughter was at the time of the trial in nurse's training; the other three children, one daughter and twin sons, are minors and living at home with their mother.

It is a peculiar record that confronts us. The appellant did not take the witness stand. He concedes in this court that the evidence of cruel and inhuman treatment is such as to justify the court to enter the decree it did enter. But he says that appellee is an habitual drunkard, and, although he is guilty of cruel and inhuman treatment, she, being an habitual drunkard, is not entitled to have a decree of separate maintenance and the care and control of the children as provided by the decree of the lower court.

In the case of Matheny v. Matheny, 191 Iowa 337, at page 339, 182 N. W. 375, 376, this court said:

"The doctrine of recrimination has been approved by this court. Dupont v. Dupont, 10 Iowa 112, 74 Am. Dec. 378; Wilson v. Wilson, 40 Iowa 230; Pierce v. Pierce, 33 Iowa 238."

We must therefore turn to the record to ascertain whether or not it sustains the charges made by the appellant against appellee. But, before doing so, let us examine what the term "habitual drunkard" means as defined by this court.

In Bizer v. Bizer, reported in 110 Iowa 248, on page 250, 81 N. W. 465, 466, this court said:

"One may be an habitual drunkard, and yet remain sober for days, and ever weeks, at a time. 'He is an habitual drunkard,' says the court in Com. v. Whitney, 5 Gray [Mass.] 85, 'whose habit is to get drunk; whose inebriety has become habitual.' In Ludwick v. Com., 18 Pa. 172, it is said that to be such he must have the fixed habit of drunkenness. The definition of the term given in State v. Pratt, 34 Vt. 323, is 'one who is in the habit of getting drunk, or who commonly or frequently is drunk.' To the same effect, see Brown v. Brown, 38 Ark. [324] 328; Magahay v. Magahay, 35 Mich. 210; Walton

v. Walton, 34 Kan. 195, 8 P. 110; Murphy v. People, 90 Ill. 59; Burns v. Burns, 13 Fla. [369] 376; Mack v. Handy, 39 La. Ann. [491] 497, 2 So. 181; Meathe v. Meathe, 83 Mich. 150, 47 N. W. 109; 9 Am. & Eng. Enc. Law, 814. See Wheeler v. Wheeler, 53 Iowa [511] 512, 5 N. W. 689 [36 Am. Rep. 240]. In McBee v. McBee, 22 Or. 329, 29 P. 887 [29 Am. St. Rep. 613], the court, after a review of all the authorities, concludes that 'there must be frequent and regular recurrence of excessive indulgence in intoxicating drinks to constitute an habitual drunkard. It is not necessary that he should drink liquors to excess, and become intoxicated every day, or even every week, but there must be such frequent repetition of excessive indulgence as to engender a fixed habit of drunkenness. Occasional acts of intoxication are not sufficient to make one an habitual drunkard. There must be the involuntary tendency to become intoxicated as often as the temptation is presented, which comes from a fixed habit acquired from frequent and excessive indulgence. The man is reduced to that pitiable condition in which he either makes no vigorous effort to resist and overcome the habit, or his will has become so enfeebled by the indulgence that resistance is impossible. There is generated in him, by frequent and excessive indulgence, a fixed habit of drunkenness, which he is liable to exhibit at any time when the opportunity is afforded. He is an habitual drunkard, because he is commonly or frequently in the habit of getting drunk, although he may not always be so. When a man has reached such a state of demoralization that his inebriety has become habitual, its effect upon his character and conduct is to disqualify him from properly attending to his business, and, if he be married, to render his presence in the marriage relation disgusting and intolerable.' "

This is an accurate summary of what is meant by habitual drunkenness. In order, therefore, for the appellant to prevail, the evidence which he offered must have proved that the conduct of appellee was such as to come within the definition. A careful reading of the record convinces us beyond any question that appellant has utterly failed to produce any evidence that appellee has the fixed habit of excessive drinking. No good could be accomplished by setting out the evidence. The children came to the witness stand and testified for their mother. One of them, 21 years of age, and at the time of the trial in train-

ing at Finley Hospital in Dubuque, was asked these questions by the court:

"The Court: You are 21 year old and now in training at Finley Hospital. You are interested in the proper care and attention of your brothers and sisters? A. Yes, I am, I am positive about that.

"Q. I want you to be perfectly fair and honest with me. Do you know of anything in the history of your mother's life that would make her unfit to have the custody of these children? A. No, I do not, not a thing.

"Q. She has always been able to take care of them properly in every manner? A. Yes.

"Q. And you do not know of a solitary thing either in language or habits that would, in the slightest degree, disqualify her from having their custody? A. There is not a thing."

The other daughter, who at the time of the trial was 17 years of age, and who was living at home, the court asked this question: "If there is a decree of separate maintenance here, have you any objection to being placed in the custody of your mother? A. No."

And so we are confronted with a record that does not justify the charges made against appellee, one in which there is no claim made that she is not a good mother; that she has not properly taken care of her children.

It is terribly unfortunate that these people, with these five children, find it impossible to live together, but upon the record we are convinced that the distinguished and able trial court, who listened to the evidence and had the witnesses before him, was right in entering the decree that he did enter, and it therefore follows that the judgment must be, and it is hereby, affirmed.

DONEGAN, C. J., and ANDERSON, HAMILTON, ALBERT, STIGER, PARSONS, and RICHARDS, JJ., concur.

KINTZINGER, J., takes no part.