## PALMA S. HEREID v. CONRAD S. HEREID.[1]

March 21, 1941.

No. 32,673.

*H. B. Haroldson,* for appellant.
*McCoy & Hansen,* for respondent.

HILTON, JUSTICE.

Action for divorce upon grounds of cruel and inhuman treatment and habitual drunkenness. Plaintiff, denied a divorce, appeals from an order denying amended findings or a new trial. The present action for divorce was commenced September 28, 1939, and is the fourth upon these grounds, the other three having been dismissed after reconciliations.

Plaintiff and defendant were married January 7, 1918. As early as 1926, plaintiff had brought the first action for divorce. The record represents the unfortunate finale to three unsuccessful attempts at reconciliation of differences. During the early years of the marriage, defendant, through diligence and frugality in

[1] Reported in 297 N. W. 97.

pursuing his trade as mechanic, supported his family, saved money, and through investment acquired a property known as Greenwood Inn. Upon its sale both plaintiff and defendant invested money in the improvement, development, and operation of an entertainment place, a tavern, known as Lindy Inn. Much of the marital discord arose subsequent to the acquisition of this tavern, perhaps because of the very environment in which they were required to live.

Relative to the alleged cruel and inhuman treatment, the evidence reveals numerous instances of personal abuse extending back to 1925, some serious, some minor. Defendant's insulting and at times physically violent methods, accompanied usually by vile, vituperative utterances, were doubtless cruel and inhuman. But whether these instances were revived by misconduct arising after the last reconciliation in 1934 and which placed plaintiff in reasonable apprehension that previous cruelty would be repeated does not control here. *Cf.* Cochran v. Cochran, 93 Minn. 284, 101 N. W. 179; Peterson v. Peterson, 68 Minn. 71, 70 N. W. 865; 6 Minn. L. Rev. 73. Whatever the view on this, the evidence of habitual drunkenness compels the conclusion that a divorce should have been granted upon this ground.

Under the statute the "habitual drunkenness" complained of must have been "for one year immediately preceding the commencement of the action." 2 Mason Minn. St. 1927, § 8585(6); Reynolds v. Reynolds, 44 Minn. 132, 46 N. W. 236. Here the trial court found that "defendant has been given to the drinking of intoxicating liquors to excess," but that these occasions "were caused by the criticism and nagging of the plaintiff herself." Defendant adopts this position and asserts also that the evidence discloses only an "occasional" not "habitual" drunkenness.

As a reason for divorce, the disruptive, intolerable derangement of the family unit which occurs with the habitual intemperance of one spouse speaks for itself. *Cf.* Burns v. Burns, 13 Fla. 369. Admittedly, a definitive statement designed to fix the factual limits of "habitual drunkenness" for all cases is neither possible nor de-

sirable. Individual susceptibilities to habit defy accurate generalization. Nevertheless, some exposition of the content of this ground for divorce is essential for disposition of this case.

It is necessary for the complainant to establish the existence of *habitual* resort to intoxicants. An occasional, nonhabitual consumption of alcohol, even to excess, does not make the consumer an habitual drunkard within the divorce laws. Bizer v. Bizer, 110 Iowa, 248, 81 N. W. 465; Moor v. Moor, 211 Ala. 56, 99 So. 316; Acker v. Acker, 22 App. D. C. 353; Broderick v. Broderick, 191 La. 492, 186 So. 5, 120 A. L. R. 1173. The condition contemplated by the statute is the fixed habit of frequently drinking intoxicating liquors to excess. Walton v. Walton, 34 Kan. 195, 8 P. 110; Brown v. Brown, 38 Ark. 324; Kennedy v. Kennedy, 101 Fla. 239, 134 So. 201. The indulgence must be so extensive that an enfeebled will, broken down through frequent acquiescence, either prevents or does not desire any active resistance to alcoholic opportunity. Magahay v. Magahay, 35 Mich. 210; Page v. Page, 43 Wash. 293, 86 P. 582, 6 L.R.A.(N.S.) 914, 117 A. S. R. 1054. This does not mean that the alleged drunkard must "have more drunken than sober hours" (Wilson v. Wilson, 128 Ark. 110, 193 S. W. 504, 505); or "become intoxicated every day, or even every week" (McBee v. McBee, 22 Or. 329, 333, 29 P. 887, 889, 29 A. S. R. 613); nor "that drunkenness shall be at regular periods, nor occur every time one has access to intoxicating liquors" O'Byrne v. O'Byrne, 211 Ala. 450, 100 So. 781. "One may refrain from drink for a considerable time and yet be an habitual drunkard." Bill v. Bill, 178 Iowa, 1025, 1029, 157 N. W. 158, 159. What is essential is the existence of a frequent, periodic manifestation of an uncontrolled appetite for alcoholics.

A close examination of the evidence in this case has convinced us that through persistent, recurring, almost regular alcoholic saturation, defendant had become an habitual drunkard within the statute. He began drinking a number of years ago, but to great excess only since 1931, the date of his first arrest for drunkenness. Altogether he was arrested five times. Upon three of those occa-

sions he was sent to the work farm. Evidently the defendant's desire for liquor reached its highest intensity during the determinable year. He was arrested twice. For plaintiff, the testimony was that defendant was "drunk" anywhere from "one-third to one-half" of the time. He had been seen "laid out" or to "crawl up the stairs many times." There is evidence that he was frequently ("approximately 25 times, maybe") so intoxicated that he did not "know what he was doing." The version of frequency was corroborated by defendant's own witness Denno. Upon being asked as between sobriety and intoxication for the defendant's common condition, Denno replied, "Well, I guess it would be about half and half."

Defendant's drinking routine was not daily or absolutely regular. It would depend "a lot on how long he was sober; if he was sober perhaps ten days you could at least look forward to at least a week of intoxication." This from defendant's son. From his own witness Hanson—"he used to get drunk and be drunk for two or three or four days and sometimes a week, and then he would be sober for maybe two or three weeks again, and then start again like that." There was quite general agreement among all the witnesses that defendant's hours of intoxication were longer and oftener during the preceding summer.

Most favorably examined, the evidence does not remotely suggest that defendant was only an occasional drinker. The testimony reveals a frequency, kind, and degree of alcoholic indulgence wholly inconsistent with any but habitual sources. During these periods of drunkenness, the defendant appears as an abusive, molesting, boisterous person who added anything but utility to the operation of the tavern.

But it is the defendant's claim that the reason for all this drinking was the plaintiff's ill-treatment of him. Doubtless domestic intranquility at times may provide some excuse for imbibing. However, if defendant's estimates that "I don't think I was drunk over twice" during the previous winter, or "I maybe was drunk four or five times," had not been so thoroughly repudiated by the

overwhelming weight of plaintiff's evidence and even by his own witnesses, we might more readily believe that his drinking occurred as consequence of plaintiff's maltreatment. Furthermore, it seems to us that there must be a rather abnormal craving for liquor present in the body if a domestic squabble can be cause for several days, perhaps a week, of solid intoxication. In fact, it was during these periods of excessive indulgence that most of the disagreement arose. Although it is evident that at times the plaintiff's treatment of defendant was neither decorous nor refined, yet it cannot be deemed vindication for the defendant's outrageous demonstration of disrespectful harassment. Berryman v. Berryman, 59 Mich. 605, 26 N. W. 789. In the main, the defendant was the aggressor, and plaintiff's actions were largely taken in self-defense. Garrett v. Garrett, 252 Ill. 318, 96 N. E. 882.

To all this it is no justification to say that there is evidence of very little intoxication during the interval between service of the summons and the trial. Judging from his past conduct under similar compulsion of circumstances, this reform was more apparent than real. In any event, this mere fact cannot absolve defendant from the responsibility for causing untold distress and misery to plaintiff and family. Tarrant v. Tarrant, 156 Mo. App. 725, 137 S. W. 56.

The order under review is reversed with instructions to grant a decree of divorce.

Reversed.