Velma Belle Lewis, Appellee, v. Arthur Donald Lewis, Appellant.

No. 46622.

February 6, 1945.

Lester L. Orsborn, of Red Oak, for appellant.

Cook & Cook, of Glenwood, for appellee.

Bliss, J.—■ The parties separated in January 1943, and plaintiff's petition was filed shortly after the separation. Defendant's answer, after admitting the marriage, residence, and issue of the parties as alleged in the petition, denied other

allegations, and alleged that "prior to the time of the marriage * * * this defendant used and drank intoxicating liquors in the same amount and with the same effects as he now uses his intoxicating liquors all of which was known to the plaintiff before the time of the marriage * * *." He prayed for a dismissal of the petition and judgment for his costs.

The trial court's findings in the judgment and decree concisely and correctly set out the material facts, as follows:

"The evidence shows the parties were married February 21st, 1933, and have two children, Arthur Kent, aged six, and Karen Anne, aged four. Plaintiff at the time of trial was twenty-nine years of age, and was nineteen years of age at the time of marriage. Defendant at the time of the trial was two years her senior. Plaintiff's father is a well-to-do farmer and stock raiser, and plaintiff is a high school graduate, and attended university [Nebraska] nearly two years. Defendant is a high school graduate, a farmer and stock raiser, and the family life of plaintiff and defendant was spent on a Mills County farm. Plaintiff has property of her own worth about $12,000, and the defendant owns property of all kinds which the Court believes is conservatively worth about $38,000, with debts and encumbrances totaling $19,000, making defendant's net worth about $19,000, most of which the plaintiff has helped acquire. Defendant is able-bodied, except for some slight temporary incapacity due to a broken leg sustained in an automobile accident some time before their separation * * *. The evidence shows that plaintiff never has used intoxicating liquor, but that she is very tolerant in her attitude towards its use by others. Most of her married life has not been happy. She is a refined type, attractive, quiet and patient. Her attitude as a witness was excellent with no appearance of bitterness or prejudice.

"Defendant's conduct as a husband cannot be justified or excused. He has been extremely neglectful of his wife and family, continually going on drinking sprees which would last from two to four or five days, gradually, as is natural, increasing in their intensity and duration, and very materially interfering with his work and his family life, a habit which is to a

woman with the temperament of the plaintiff very humiliating and agonizing. That she was greatly disturbed by his conduct and his drinking was apparent. She was continually required to look after the farm work and call in someone to stay with her at night during his absences when drinking, she being afraid to stay alone. The defendant was neglectful and frequently required the plaintiff and the children to wait long hours for his return when they had all gone away from home together. This · happened in Omaha and Red Oak and frequently in Henderson. To a woman of plaintiff's refinement of character, the acts and conduct of the defendant were intolerable and, manifestly, could no longer be safely endured by the plaintiff.

"The Court is of the opinion and so finds that defendant's use of intoxicating liquor had become a habit and excessive since the marriage; that such condition did not exist prior to the marriage; that the use of liquor by the defendant during the last several years, in the neighborhood of six, has been gradually increasing; that he drank for days and nights at a time and seemed unable to leave it alone; that he neglected his work and his family because of it.

"The Court is of the opinion that the evidence clearly shows such cruelty and neglect and such habitual use of intoxicating liquor * * * that the plaintiff should have a divorce on both the grounds of cruel and inhuman treatment and habitual drunkenness, and the Court so finds and holds.

"The Court finds that the best interest of the two minor children * * * requires that they be placed in the care, custody and control of their mother, the plaintiff, with the right of visitation by the defendant at reasonable times and at reasonable intervals."

The court adjudged and decreed that defendant pay to plaintiff the sum of $4,500—$2,000 on or before July 1, 1943, and $2,500 on March 1, 1945—in full of all property rights and temporary and permanent alimony, and further pay to plaintiff for the use and benefit of the two minor children, beginning July 1, 1943, and for each and every month thereafter, the sum of $25, until the younger child reaches the age of eighteen years.

We fully agree with the court's findings of fact, conclusions of law, and awards. Indeed, the able court, lately de-

ceased, was generously charitable toward the defendant in its findings and comment. The findings, judgment, and decree are amply supported by the evidence. In his attempt to sustain his alleged defense that the plaintiff knew of his habit of drinking before their marriage the defendant introduced considerable testimony of his drinking and wildness as a young man. We are satisfied that whatever his antemarriage use of intoxicants may have been, the plaintiff had no knowledge of it, and that it was not habitual, and fell far short of his excesses in that respect after marriage. Almost every witness called on both sides, and there were twenty-eight, including the parties, gave testimony as to the drinking of the defendant. A number of these were tavern keepers whom he patronized. Others were those who had drunk with him. Witnesses of these two classes testified for the defendant and minimized to some degree the extent of his drinking. The trial court saw and heard all of these witnesses and apparently scrutinized and weighed their testimony with conscientious care. We are not impressed with the probative value of much of the testimony offered by and in behalf of the defendant as an aid in the ascertainment of the truth. The plaintiff, on occasions almost without number, had pleaded with him to drink less, and he just as often promised that he would. But he never did. On his return from each debauch, after absences of from one to six or more days and nights, he would say he did not know why he did it, but he got started drinking, and "I just couldn't help myself." Many times, at all hours of the night, he was brought home by others, drunk and sick. Many times he came in during the early morning hours and when plaintiff arose she would find him asleep downstairs, fully dressed and showing the effects of drinking. Many times, winter and summer, and in cold, inclement weather, she and the children waited for him for hours in the car outside of some drinking place. Plaintiff estimated that during the last year before separation there were not over thirty or forty days that he did not drink intoxicating liquors, and that during the last two years of their married life he gave little attention to farming. The final act which caused her to leave him was his absence from the home from Monday night until Saturday morning, when he returned for a short time, and then

left without eating breakfast. At alumni and other meetings and entertainments he would publicly embarrass her by his drinking. Reports would come to her of his drunken and disgraceful conduct. It would serve no purpose to enumerate or to amplify these occurrences. It needs no argument to convince one that his public drinking and misconduct, and his extreme neglect of the plaintiff and the children must have hurt her cruelly. She testified that "it has made me a nervous wreck, and I simply could not take any more of it." The record discloses no justification nor the slightest excuse or extenuation for his misconduct. Yet he testified:

"I have not stayed away from home too much. My wife is all wrong about that I stayed away too much and drank too much. I have been a model husband. If we live together again, I would not even take a drink. My wife should have been satisfied with the way I was treating her. Except for missing a few meals, that is about the only thing I might have improved in the situation."

 I. It is provided by section 10475(4), Code of 1939, that a wife may divorce her husband, "When, after marriage, he becomes addicted to habitual drunkenness." With respect to a like-worded statutory ground, the Alabama court, in O'Byrne v. O'Byrne, 211 Ala. 450, 100 So. 781, stated, in substance, that the term "becoming addicted" is descriptive of a well-recognized fact that the continued use of alcoholic liquors creates a craving therefor which steadily breaks down the user's resistance to the satisfaction of the craving. "Habitual drunkenness" has been described as the persistent habit of becoming intoxicated. Kennedy v. Kennedy, 101 Fla. 239, 134 So. 201; Bevan v. Bevan, 44 R. I. 12, 114 A. 130; Hereid v. Hereid, 209 Minn. 573, 297 N. W. 97; 27 C. J. S., Divorce, section 48(b). With reference to this ground of divorce, it is said:

"It may, however, be stated generally that the nature and extent of the drunkenness contemplated must be such that the defendant, by frequent indulgence, may be said to have a fixed and irresistible habit of drunkenness whereby he has lost the power or will to control his appetite for intoxicating liquor, as

where he indulges in the practice of becoming intoxicated whenever the temptation is presented and the opportunity is afforded. * * * The law makes habitual drunkenness a ground for divorce, not merely because it disqualifies the party from attending to business, but in part, if not mainly, because it renders him unfit for the duties of the marital relation and disqualifies him from properly rearing and caring for the children born of the marriage.'' 17 Am. Jur. 220, section 135, page 221, section 137, with authorities cited.

The decisions of this court respecting this ground of divorce are in full accord with the generally recognized principles above stated. In Bizer v. Bizer, 110 Iowa 248, 250–252, 81 N. W. 465, 466, Justice Ladd, speaking for the court, reviews the pertinent authorities, and, by comment and quotation, summarizes what is meant by ''habitual drunkenness'' thus:

''Nor to be such [a habitual drunkard] was it essential that he be continually in that condition. One may be an habitual drunkard, and yet remain sober for days, and even weeks, at a time. 'He is an habitual drunkard' * * * 'whose habit. is to get drunk; whose inebriety has become habitual.' * * * 'one who is in the habit of getting drunk, or who commonly or frequently is drunk.' * * * 'It is not necessary that he should drink liquors to excess, and become intoxicated every day, or even every week, but there must be such frequent repetition of excessive indulgence as to engender a fixed habit of drunkenness. Occasional acts of intoxication are not sufficient to make one an habitual drunkard. There must be the involuntary tendency to become intoxicated as often as the temptation is presented, which comes from a fixed habit acquired from frequent and excessive indulgence. * * * He is an habitual drunkard, because he is commonly or frequently in the habit of getting drunk, although he may not always be so. When a man has reached such a state of demoralization that his inebriety has become habitual, its effect upon his character and conduct is to disqualify him from properly attending to his business, and, if he be married, to render his presence in the marriage relation disgusting and intolerable.' [McBee v. McBee, 22 Or. 329, 29 P. 887, 29 Am. St. Rep. 613].''

These principles have always been the rule of this court. See Wheeler v. Wheeler, 53 Iowa 511–513, 5 N. W. 689, 36 Am. Rep. 240; Bill v. Bill, 178 Iowa 1025, 1028, 1029, 157 N. W. 158; Matheny v. Matheny, 191 Iowa 337, 338, 182 N. W. 375; O'Connor v. O'Connor, 191 Iowa 339, 342, 182 N. W. 372; Leonard v. Leonard, 221 Iowa 722, 724–726, 266 N. W. 537.

Under the record and the authorities cited herein, the finding and decree of the trial court, respecting the ground of habitual drunkenness, have our full approval.

II. Appellee concedes that the appellant never abused her by physical violence. Under our repeated decisions, such violence is not necessary to establish the ground of inhuman treatment endangering her life. Section 10475(5), 1939 Code. See Cole v. Cole, 23 Iowa 433, 438; Thompson v. Thompson, 186 Iowa 1066–1070, 173 N. W. 55, 5 A. L. R. 710; Cruse v. Cruse, 201 Iowa 810, 817, 208 N. W. 324; Dabelstein v. Dabelstein, 191 Iowa 808–811, 183 N. W. 385; Coulter v. Coulter, 204 Iowa 575, 215 N. W. 619; Brookins v. Brookins, 230 Iowa 1272, 1275, 1276, 300 N. W. 540; Berry v. Berry, 115 Iowa 543–546, 88 N. W. 1075; Craig v. Craig, 129 Iowa 192, 194, 105 N. W. 446, 447, 2 L. R. A., N. S., 669, 671; Littleton v. Littleton, 233 Iowa 1020, 10 N. W. 2d 57.

The inhuman treatment which she alleges as a cause for divorce grows out of and is directly connected with his habitual drunkenness, but it is, nevertheless, a separate and sufficient ground. His protracted and frequent absences, both day and night, from his home, wife, and children; her waiting and watching for him, alone and sleepless, night after night; his repeated failure to return; having others bring him home, drunk and sick, and, on one occasion, bleeding from a fight; finding him downstairs in the mornings, sodden with liquor; waiting and looking for him, with the children, both inside and outside of his drinking places; his calling at the hospital, drinking or drunk, while the little girl was sick with pneumonia; looking him up when the stock was out; his neglect in feeding, watering, and caring for the livestock; taking the children to drinking places; humiliating and shocking her by his public drinking both in and out of her presence; a supposedly family car, filthy in appearance and odor from its use in drunken ca-

rousals; reports of his drinking and association with other women: she endured these humiliations, indignities, heartaches, worries, and neglects for years, hoping that he would—and patiently giving him every opportunity—make good on his promises to reform. She married him "for better or worse," and she strove earnestly to keep this vow. But there was a physical and mental limit to her endurance. The quiet patience of this gentle, refined wife and mother finally broke under the intolerable burden of humiliation and neglect. She said: "I simply could not take any more of it. * * * I did not want to start another [farming] year of it." His inhumanity impaired her health and thereby endangered her life. Neither the law nor society demands that the marital relation be continued at such sacrifice.

III. Appellee estimated the appellant's net worth at $23,245; the appellant, at $16,228.30; and the trial court at $19,000. Appellant argues that the court, in arriving at its estimate, considered him as being the owner of the entire equity —$2,880—in the ninety-six-acre tract. The appellee in her petition alleged the ownership of an undivided half interest in this tract. It does not appear clearly from the record what the trial court's thought was on this point, as it did not itemize the separate values in arriving at the total estimate of $19,000. The ownership of this land was not determined in the lower court, and we do not pass upon it, although appellee's reply argument states that the deed runs to "Donald A. Lewis and Velma Belle Lewis." But, without regard to whether the trial court did or did not consider appellant as the sole owner, it is our judgment that the award of permanent alimony, which also included sufficient of the household goods to enable appellee to furnish a home for her and the children, might well have been increased. It would not be fair to the appellee and the children to reduce the alimony, even though we should accept the appellant's net worth at his own estimation of $16,228.30. Appellee received no award for attorney's fees, and but $100 as suit money. The appellant shows a lack of appreciation of his obligations to his children and to their mother by asking this court to "reduce the alimony allowed the plaintiff to at least the sum of about $1,500.00."

■ IV. The experienced trial court observed the parties in the courtroom and while testifying. It was in a position to better appraise their dispositions, temperaments, and character, and the veracity and credibility of themselves and their witnesses, than this court. While we have tried this case anew on appeal, this court, because of the trial court's position of vantage, has always accorded weighty consideration and reliance to and upon the findings and decree of that court. Davis v. Davis, 228 Iowa 764, 774, 292 N. W. 804; Massie v. Massie, 202 Iowa 1311, 1313, 210 N. W. 431; Blew v. Blew, 225 Iowa 832, 835, 282 N. W. 361; Klepper v. Klepper, 234 Iowa 1138, 1142, 15 N. W. 2d 213, 215.

The judgment and decree are—Affirmed.

All JUSTICES concur.