LIZZIE R. CRAIG, Appellant, v. WILBUR E. CRAIG, Appellee; and LIZZIE R. CRAIG, Appellee, v. WILBUR E. CRAIG, Appellant.

**Divorce:** INHUMAN TREATMENT: EVIDENCE. In an action for divorce on the grounds of cruel and inhuman treatment, the evidence is reviewed and held to show an utter disregard by the husband of his marital vows, resulting in a destruction of his wife's health and happiness and entitling her to a decree.

**Condonation.** The condonation of a husband's wrongful treatment of his wife is on condition that he will abstain therefrom; and, if thereafter committed the original wrong is revived and the condonation is not a bar to an action for divorce.

*Appeal from Pocahontas District Court.*— HON. W. B. QUARTON, Judge.

THURSDAY, DECEMBER 14, 1905.

THESE two cases should have been docketed as one. They are appeals in an action for divorce brought by plaintiff against her husband, based upon cruel and inhuman treatment, and adultery said to have been committed by him. The trial court granted the relief prayed, basing it upon cruel and inhuman treatment, but denied relief on the ground of adultery. Both parties appeal. As defendant first perfected his, he will be called appellant. The two appeals will be disposed of in one opinion. *Affirmed.*

*F. C. Gilchrist,* for appellant.

*Healy Bros. & Kelleher,* for appellee.

DEEMER, J.— Plaintiff and defendant were married August 20, 1891, and as a result of this union three children were born unto them. They lived happily together until the

latter part of the year 1902, when the defendant, who was a school director of his subdistrict, brought to his home a young lady school-teacher, who had been employed by him to teach the school in his subdistrict. This young lady came into the family on Thanksgiving Day, and remained and boarded there until plaintiff left her husband on February 26, 1903, when she returned to her former home in Nebraska. Plaintiff left the defendant and her home, taking her children with her, because of the conduct of the defendant and the school-teacher. Defendant admits that his conduct with the young woman was not altogether discreet, but says that his relations with her were purely platonic in character, and that his wife condoned whatever offenses he may have been guilty of in forgetting his marital vows. He denies any such conduct on his part as entitled plaintiff to a divorce, and asks for the custody of his minor children, with a decree for separate maintenance and permanent alimony.

It is clearly shown and practically undisputed that very shortly after the advent of the school-teacher into the defendant's family a warm attachment sprang up between her

1. DIVORCE: inhuman treatment: evidence.

and the defendant, which grew until it ripened into a semipublication of mutual love. They each declared to plaintiff and to others that they loved each other, and defendant was heard to say that he could not live without her. Naturally enough his affection for his wife waned as his love for the young woman increased. He declared to his wife that he did not love her, and thought no more of her than he did of any other woman. In an excited moment he called his wife " a hag," although for this he repented and asked her forgiveness. He gave presents to the school-teacher, frequently drove her to her school, took her often to the market town, which was some miles away, arriving home late at night. He took her to lectures, entertainments, and to church, leaving his wife at home. He sat up with the school-teacher late at night, reading novels with her, after his wife and children had retired.

He told the plaintiff that he had found one whom he liked better than her, and that he was going to leave her. He claimed to owe the young woman a duty which he should and would perform. He told his wife that he could not stand it to live with her; that it would kill him. The school-teacher admits that she hugged and kissed the defendant, and he does not deny it.

Other matters might be related, but we have said enough to show the conduct and behavior of the defendant toward the woman whom he brought into a previously happy home. Plaintiff remonstrated with the defendant over his conduct with the teacher, but it did no good; and she testified that, having endured it as long as she could, she left him because she no longer had a home; that she had become weak, nervous, worn out, and sick, had lost appetite, decreased in weight, and could not sleep on account of her husband's conduct. Her physician, who visited her after she had left the defendant, testified that she was anæmic and nervous, that there was a tremor in her hand and tongue, and that she would break down and cry. Others testified that she was weak and nervous and could not at times talk above a whisper. Before this she had enjoyed fairly good health, although never very strong. A short while before the separation, defendant said he was going to leave plaintiff, and offered to deed the farm to her and the children. While talking about the matter of property division, he exhibited a revolver, and said that they, himself and wife, should settle their matter alone, and that if any of the members of her family interferred he would send a bullet through them.

Surely the conduct above described constituted such cruel and inhuman treatment as entitled plaintiff to a divorce. Possessed of no more than ordinary sensibilities, we can hardly see how defendant's conduct could do otherwise than deeply wound the wife whom he had promised to love, honor, and respect, and, forsaking all others, cleave only unto her. Such wounds are deeper and more dangerous to

health than blows, more harassing than profane language, and more distressing than vulgar talk. To trusting and sensitive women they are more brutal than bodily injury, and leave scars which never can be healed. That it justifies a divorce is too clear for argument or the citation of authority. But see, in this connection, *Berry v. Berry*, 115 Iowa, 544; *Shook v. Shook*, 114 Iowa, 597; *Douglass v. Douglass*, 81 Iowa, 258; *Doolittle v. Doolittle*, 78 Iowa, 694; *Cole v. Cole*, 23 Iowa, 438; *Aitchison v. Aitchison*, 99 Iowa, 93.

But it is said that plaintiff with full knowledge condoned all defendant's matrimonial offenses. It is true that about a month before plaintiff left defendant, he (defendant) told his wife that he would act as a gentleman, and that the school-teacher would act as a lady, and that he was ashamed of the word he had used in calling his wife a hag. The wife forgave the use of the word, and said that, if they would act as people ought to, she would stay and live with defendant. The testimony shows, however, that defendant was even more attentive to the young lady after this promise than he was before; that both defendant and the school-teacher told plaintiff that they loved each other and continued their attentions one toward the other. Not only that, but they made an open confession of their love to strangers. Condonation is always conditional on the fact that the party forgiven will thereafter abstain from the commission of like offenses. If they are afterwards committed, the original wrong is revived, and may be counted upon as cause for divorce. *Lewis v. Lewis*, 75 Iowa, 200; *Douglass v. Douglass*, 81 Iowa, 258; *Shackleton v. Shackleton*, 48 N. J. Eq. 364 (21 Atl. Rep. 935, 27 Am. St. Rep. 478); *Ryder v. Ryder*, 66 Vt. 158 (28 Atl. Rep. 1029, 44 Am. St. Rep. 833). While there was perhaps a condonation by plaintiff, the implied, as well as express, condition upon which it was granted was violated, and the case should be treated as if no promise of forgiveness had been made. The trial court was

2. CONDONATION.

right in granting plaintiff a divorce, and there is no merit in defendant's appeal.

As to plaintiff's appeal: We have read and re-read the record, and are satisfied that, save in a scriptural sense, no adultery was in fact committed by the defendant. His conduct, while exceedingly reprehensible, and sufficient, as we have found, to justify a divorce, did not go so far as to amount to criminality. Defendant is a religious man, a member of a church, and until the occurrences detailed in evidence bore an enviable reputation. In the school-teacher he found one who sympathized with him, and there seems to have been a natural " soul affinity " between the two. They were alike in tastes, each suffered from slight maladies, and a fellow feeling made them wondrous kind. But the evidence distinctly negatives any unlawful liaisons. To that extent the conscience of neither would allow them to go. The whole matter is extremely unfortunate, and defendant has repented " in sackcloth and ashes." But his conduct was such as to alienate all his wife's affections, and she is not bound to take him back. The school-teacher seems to have been a woman of previous good character. She has now married a man with whom she is living in apparent happiness. Both she and defendant were sadly in fault in this matter; but there is not enough evidence upon which to brand them with the infamy of having committed a crime. There is no merit in plaintiff's appeal.

The result is that in each case the judgment must be, and it is, *affirmed.*