.PAULINE E. POOLEY, Appellee, v. WILBUR POOLEY, Appellant.

**DIVORCE:** Appeal—Veracity of Witnesses—Special Deference to
1 Views of Trial Court. Recognizing the fact that passions and prejudices are so often unduly aroused in divorce proceedings, *held* that special deference will be given to the views of the trial court, when the questions to be decided turn on the veracity of witnesses.

**DIVORCE:** Cruelty—Evidence—Sufficiency. "Cruel and inhuman
2 treatment" does not necessarily involve a finding of physical violence, but may consist of habitual nagging, accusations of un-

chastity or criminal conduct, vulgarity, and petty criticisms. Evidence reviewed, and held to sustain a decree on these grounds.

DIVORCE: Evidence—Malign Influence of Plaintiff's Mother— 3 Pleading. The unwise or improper interference and malign influence of plaintiff's mother, in so far as it may tend to show that defendant is not guilty of the charge of cruelty, is admissible under a general denial.

*Appeal from Greene District Court.*—F. M. POWERS, Judge.

MONDAY, APRIL 10, 1916.

REHEARING DENIED SATURDAY, SEPTEMBER 30, 1916.

ACTION in equity for divorce, on the ground of cruel and inhuman treatment. There was a decree for plaintiff, and defendant appeals.—*Affirmed.*

*Church & McCully* and *A. D. Howard,* for appellant.

*W. W. Turner* and *Clark, Byers & Hutchinson,* for appellee.

WEAVER, J.—One phase of the troubles arising out of the marriage of these parties was before this court in *Pooley v. Dutton,* 165 Iowa 745, a reading of which will, in some respects, afford light upon facts pertinent to the present appeal. As was there shown, the young couple were then living apart. The breach then existing was never healed. This action was begun October 30, 1912, and was pending when the other case was tried. The petition charged the defendant with cruel and inhuman treatment, in the following particulars: by exhibitions of violent temper; by an extremely critical and fault-finding attitude toward the plaintiff, not only when alone together but also in the presence of others; by threatening to kill and injure her; by cursing and reviling her; by false charges of improper and unchaste conduct on her part; by falsely charging her with the crime of abortion; and by numerous other acts persisted in at great length and

on frequent occasions, thereby subjecting plaintiff to great distress, humiliation and suffering, to such a degree as to impair her health and endanger her life. By a later pleading, plaintiff charges defendant with desertion without just cause for a period of more than two years. The defendant admits the marriage, but denies all the charges made against him by his wife. The trial court, having heard all the evidence, granted the plaintiff a divorce, with a recovery of alimony in the sum of $1,000, and attorneys' fees in the further sum of $200, and costs.

As is usual with this class of cases, the questions brought up by the appeal are mainly those of fact. The case was a long time on trial, the witnesses many, and the evidence, exceedingly voluminous. Any attempt to set out the testimony of the several witnesses within the allowable limits of an opinion would, at the very best, be partial and incomplete, and we shall confine our discussion thereof to a brief consideration of its general tendency and effect.

1. DIVORCE: appeal: veracity of witnesses: special deference to views of trial court.

The case is no exception to the rule that, in litigation over family matters, the passions and prejudices of parties and witnesses are quite sure to become so aroused and to so permeate and color the testimony that it is often, if not always, a matter of much doubt and perplexity to determine the real merits of the controversy. It is a very exceptional case of that class where either party can be said to be entirely blameless. It may further be said that in no other class of cases are the personal bearing, attitude and bias of the witnesses of more value in determining their credibility or in weighing their testimony. In this respect, the trial court has such an advantage over an appellate tribunal having nothing but the printed record before it that, where a question to be decided turns upon the veracity of witnesses, we are always inclined, though considering the issues de novo, to accord much weight to that court's views thereon.

The marriage of the parties in this case was the result of

a hasty, ill-advised elopement, neither party to which had the
experience, training, judgment or good sense to realize the
importance of the step thus taken. The mar-
riage had hardly taken place when disillu-
sionment began, and jealousies, quarrels,
bickerings, charges and countercharges,
which could have only one ending, ensued. The unhappy
situation was doubtless aggravated by the unwise, not to say
foolish, interference of the young wife's mother, whose rose-
colored dreams of a brilliant future for her only daughter
had been disappointed by what she deemed an undesirable
marriage. But whatever may be said as to the exciting
causes of their troubles, it is quite clear that the defendant,
beginning within a day or two after their marriage, developed
a marked disposition to be jealous of his wife, to fly into a
passion of anger, and call her to strict account over matters
of the most trifling importance. If the wife is to be believed,
he began at that early hour of wedded bliss to charge her
with consorting and flirting with other men, told her that her
mother was not a good woman, threatened to kill her if she
ever got a divorce from him, and talked to her of poisons
which could be administered without possibility of detection.
Later, while plaintiff and defendant were visiting her parents,
he declared to her parents that he was going to take his wife
out west, and he would shoot anyone who interfered. In
explanation of this, he says that he meant he would kill his
wife before he would allow anybody to take her from him.
He called his wife a "damned liar," and on occasion, sought
to compel her to give up to him the rings he had given her
before their marriage. He charged her with committing an
abortion, called her the murderer of his child, and when she
denied it, he called her a liar. Again returning to the charge
of abortion, he said the murdered child was not his, but sub-
sequently retracted that part of his accusation. Another wit-
ness, not of the family, corroborates this part of the plaintiff's
testimony. The witness says she heard him say to her, "You

*2. Divorce:
cruelty: evi-
dence: suffi-
ciency.*

God damned whore—you killed my child," and that he declared she "was a whore and her mother was a whore before her; that she did kill his child; that she had refused to have the doctor he wanted and had gone over to some doctor at Grand Junction and had had an abortion performed, and he would have her and her mother in the penitentiary."

Still another witness, not of the family, testifies that she heard defendant call plaintiff a liar and murderer, and say he had witnesses by whom he could prove it. He returned to the charge again and again on different occasions. Plaintiff swears that these charges were entirely false. On the last occasion when he visited his wife at her parent's home and was about to leave, he responded to her good-by by telling her to "go to hell." As a result of his alleged mistreatment, she testifies that she became sick and nervous, suffered from insomnia, lost appetite, and came really to believe he would kill her. There are other alleged instances of illtreatment, but we have given enough to indicate in a general way the case made by the testimony of plaintiff and her witnesses. Much of this matter is wholly denied by the defendant, and where not denied, he has made explanation to soften its apparent effect. He does admit that he accused his wife of the crime of abortion, but denies that he cursed her or called her a murderer. He admits, however, that he repeated the accusation on several different occasions. Even after their separation, in a letter written her, after vowing in the most ardent terms his undying love, he closes the epistle with this most peculiar encouragement to hope for future domestic felicity:

"Of course dear you have done everything to make me hate you and I do, but my love is the same as it always has been and *I love you*. I will always love you dear no matter what you have done. I still accuse you of the things I have accused you of and I know they are so but still dear I love you, so you see I love you an awful lot. I don't see how you

could have done those things, you were truer than that to me before you married me.''

As a witness, he says his reference in the letter to the ''things I have accused you of'' was his charge that she had committed an abortion. His evidence in general is largely given to show that his wife's attitude toward him was and is largely due to the influence of her mother, and that the complaints made against him are entirely false or exaggerated. In short, his defense is one of denial only, thus raising a definite question of comparative veracity of the parties and their witnesses. If the trial court found, as it evidently did, that the plaintiff and her witnesses told the substantial truth, it could not do otherwise than grant the divorce, even though it may not have believed the wife to be wholly without fault; and, unless our reading of the case leads us to the opposite conclusion, we cannot do less than to affirm. From our reading of the record, we are disposed to hold that the decree is right. Cruel and inhuman treatment does not necessarily involve a finding of physical violence or brutality. When a husband habitually nags his wife, accuses her of unchaste or criminal conduct, curses her, makes her the victim of countless petty criticisms, both in private and in the presence of others, such treatment may, and often does, tend to impair the health and shorten the life of a woman of ordinary sensibilities, and when such case is made, a divorce is justified. *Shook v. Shook,* 114 Iowa 592.

Complaint is made that the trial court did not allow defendant to plead or prove the alleged interference and malign influence of plaintiff's mother in bringing about a separation of the parties. In so far as any evidence of that kind would be admissible at all, we think no pleading other than defendant's denial was required, and, as a matter of fact, defendant appears to have gotten into the record all, if not more than, he was entitled to in that regard. What he is called upon to meet in this case is the matter of his own

3. DIVORCE: evidence: malign influence of plaintiff's mother: pleading.

alleged misconduct toward his wife, and for this, the misconduct of his mother-in-law, whatever it may have been, constituted neither defense nor excuse.

The decree of the district court is therefore—*Affirmed.*

EVANS, C. J., DEEMER and PRESTON, JJ., concur.