LUCY E. INMAN, Appellee, v. H. L. INMAN, Appellant.

**CONTINUANCE: Lack of Diligence.** The appellate court will not, 1 ordinarily, disturb a ruling refusing a continuance, when the record reflects a lack of diligence on the part of the movent.

**DIVORCE: Grounds—Cruelty Without Physical Violence.** Cruel and 2 inhuman treatment may be established by testimony tending to show that a delicate woman, suffering from serious female trouble, was characterized as "indecent," was unjustly accused of "damned meanness" and extravagance, was otherwise cursed and sworn at, was required, without reason, to perform unusual labor, and was finally deserted and left penniless.

**DIVORCE: Pleading—Condonation.** Condonation may not be consid- 3 ered unless pleaded.

**DIVORCE: Alimony—Nonexcessive Award.** An award of alimony 4 equal to one half of defendant's property may be not excessive.

*Appeal from Poweshiek District Court.*—CHARLES A. DEWEY, Judge.

NOVEMBER 13, 1923.

ACTION for divorce, on the ground of cruel and inhuman treatment. Decree for plaintiff, granting her a divorce, awarding her the custody of a minor child, and fixing the amount of alimony. The defendant appeals.—*Affirmed*.

*R. J. Smith*, for appellant.

*T. J. Bray*, for appellee.

FAVILLE, J.—I. The first question presented involves a consideration of the action of the court in overruling appellant's

motion for a continuance of the case. The petition in the cause
was filed December 13, 1921. The service of
the original notice was by publication, the last
publication being on February 14, 1922. Appel-
lant appeared by counsel on March 13, 1922, and filed answer
on May 22d of that year. In said answer so filed, appellant al-
leged that he had commenced an action for divorce against
appellee in the state of Texas, and that the issues had been made
up, and said action was then pending. It appears that the term
at which the cause was tried commenced on September 4, 1922,
and on that day the cause was assigned for trial on September
8th. On the last named date, at the request of counsel for ap-
pellant, the time of trial was postponed until September 18th.
The trial was again postponed until September 19th. When the
cause was called for trial, counsel for appellant filed a motion
for a continuance. Also, on said day he filed an amendment to
his answer. The amendment alleges that, "on the —— day of
August, 1922," a decree of divorce had been duly entered in
the district court of Texas in and for Dallas County, in favor of
appellant and against the appellee. The affidavit in support of
the motion for continuance was made by counsel for appellant,
and stated that appellant was a resident of Texas, and contained
the statement that, during the month of August, 1922, the appel-
lant had obtained a divorce from the appellee in Texas, and that
transcript of the decree and other proceedings in said case had
been received by appellant's attorney, but that they contained
clerical errors in not being properly certified, and that the same
had been returned to Texas on or about the 12th and 13th of
September, for correction and due exemplification as required
by law, and that the same had not been returned to appellant's
counsel. A copy of the decree purporting to have been entered
in the state of Texas was made a part of said motion for con-
tinuance. A resistance was filed to the motion for a continu-
ance, and the motion was denied.

The trial court might, within its discretion, have granted a
continuance upon the showing made, and have enabled the appel-
lant to secure a duly certified copy of the decree of the Texas
court; but we do not think that the court so abused its discretion
in this regard as to require a reversal of the case. The answer,

*1. CONTINUANCE: lack of diligence.*

which was filed on May 22, 1922, pleaded the pendency of the action in the state of Texas at that time. It appears from the copy attached to the motion that the decree was rendered in Texas on the 11th of August. There was no showing as to the date when the attorney for appellant received the copy of this decree. The affidavit shows that the papers were returned to Texas on the 12th and 13th of September, after the case had been assigned for trial on the 18th.

The likelihood of the papers' reaching Texas by mail and being recertified and returned in time for the hearing was quite remote. No amendment to the answer was filed, setting up the rendition of such alleged decree, until the 19th of September, when the cause was reached for trial. Appellant's Iowa counsel had been advised at least since the answer was filed, in May, of the pendency of the Texas case. The ease and facility of telegraphic communication could readily have procured the properly certified papers within ample time, even after the error had been discovered by counsel for appellant. With the cause already assigned for trial, the exercise of diligence might well have suggested a more expeditious effort to secure the certified transcript.

Furthermore, there was available to appellant the remedy of application for a new trial of the cause, upon a proper showing that a valid decree of divorce had, in fact, been entered in the state of Texas, antedating the trial of this cause. No such application was made.

Under all of the facts and circumstances as disclosed by the record, we do not feel warranted in holding that the court abused its discretion in refusing to grant a further continuance of the case, upon the showing made.

II. Appellant contends that the evidence is insufficient to justify the granting of a divorce. No evidence was offered in behalf of appellant. The testimony in behalf of the appellee shows that the parties to this action were married September 7, 1902, and lived together until the 6th of October, 1921. At the time of the trial, appellee was 39 years of age, and appellant 43. Shortly after their marriage, they began farming in Poweshiek County, and farmed for several years, when they

2. DIVORCE: grounds: cruelty without physical violence.

moved to the state of Montana, where they resided for two years. Subsequently, they lived two years in Wyoming, and then returned to Montana for a period of three years, and came back to Iowa in April of 1920. Three children have been born of the marriage, one of whom died. The elder is a daughter, nineteen years of age, the other child a son, of sixteen. The evidence in behalf of appellee tends to show that, for a number of years, the married life had not been happy. Appellant, it appears, was much given to being away from home, and, as it is expressed in the testimony, he was "gadding around most of the time." Part of the time, the wife had to pump and carry water for seven head of horses, two cows, and eighteen or twenty head of hogs, aside from taking care of the children and doing the housework and cooking and waiting on hired men, of whom, after the return to Iowa, appellant kept one all of the time, and from two to four at other times. The evidence shows that appellee's health was not good, and that, when she requested help, appellant denied her any, and at different times cursed and swore at her. At one time, he told her she was not a decent woman, and when told by a doctor that she needed an operation, appellant made her stop going to that doctor, and said she did not need an operation, and that there was nothing the matter with her "except damned meanness." Appellant claimed to appellee that the clothes she bought were the cause of his financial ruin; and the testimony tends to show that, during the entire married life, she had bought but one silk dress, at a cost of $13, and made it herself. She testified that at times he said he loved her, and at other times he said he did not; that he said he was tired of her, and had been trying to run her off. It appears that, in the fall of 1921, appellant disposed of his personal property, and converted it into money, aggregating about $900. On the 6th of October, without any notice to appellee, he disappeared, taking all of the money with him. The appellee and her two children were left without means of support, and appellant made no contribution to their support thereafter. He did not tell appellee that he was going to Texas. After appellant left, appellee provided for herself and her children by work and by the proceeds of the sale of some chickens. On January 17, 1922, she underwent an operation for female trouble. She testified that the

effect of the husband's treatment on her health was to cause her to become very nervous, and that she thought she would have been insane in a short time, had it continued; that her health had improved since she had been living apart from her husband. The daughter and the father of appellee, who resided near the parties while they were living in Iowa, corroborated the appellee in material parts of her testimony on the question of cruel and inhuman treatment.

Appellant contends that the treatment proved by appellee is not of a character sufficient to constitute such cruel and inhuman treatment as to impair health and endanger life. True, there is no evidence of physical violence in the form of blows or other physical injury, but we have repeatedly held that there may be cruel and inhuman treatment sufficient to impair health and endanger life, without actual physical injury. That a delicate woman, suffering with a serious female trouble that required a surgical operation, should be called an indecent woman, accused of "damned meanness" and extravagance, be cursed and sworn at, and required to do unusual manual labor, without good reason therefor, and finally should be left penniless and be deserted by an absconding husband, who sold his property and converted it into money and took all the cash with him, may well be said to be cruel and inhuman treatment, within the contemplation of our statute, even though no physical violence were, in fact, used.

We are satisfied from the record that the trial court did not err in awarding a decree of divorce to the appellee, upon the record made. *Rader v. Rader*, 136 Iowa 223; *Craig v. Craig*, 129 Iowa 192; *Berry v. Berry*, 115 Iowa 543; *Thompson v. Thompson*, 186 Iowa 1066.

III. Appellant contends that appellee condoned the acts of appellant by continuing to live with him as his wife, after some of the transactions occurred. No plea of condonation was interposed by appellant, and even if it might have been available to him, under the facts in this case, if pleaded (a question upon which we do not express an opinion), it cannot now be considered by us. *Chapman v. Chapman*, 181 Iowa 801, 804; *Craig v. Craig*, supra.

3. DIVORCE: pleading: condonation.

IV.   It is contended by appellant that the award of alimony is excessive, and that in any event the same should be reduced.

The decree awards the custody of the minor child, Harold, to appellee, and provides that appellee shall recover from appellant, as alimony, "a sum equal to one half of the undivided one-sixth interest of the defendant, H. L. Inman, in and to the estate of W. J. Inman, deceased," less the sum of $500.   It appears that appellant had received $500 from his father's estate, and approximately $900 as the property that had been accumulated during the married life of the parties.   The evidence tends to show that the total amount of his share in his father's estate would be approximately $5,000; therefore, appellee, under the decree, would receive approximately $2,500.   There is no showing that appellant is indebted.   The minor son is sixteen years of age, and is being educated by appellee, with whom he lives. The daughter, of nineteen, is also attending school, and lives with appellee.   The evidence shows that appellee is a frail and delicate woman, and that appellant is a man in the prime of life, and is well and robust.   It also appears that appellee has no property of her own.

*4. DIVORCE: alimony: non-excessive award.*

Upon a consideration of the entire record, we are not disposed to interfere with the award of alimony made by the trial court.   As bearing on the question discussed, see *Vey v. Vey,* 150 Iowa 166; *Daly v. Daly,* 154 Iowa 486.

The decree of the district court meets with our approval, and we acquiesce in it.   It is, therefore, in all respects,—*Affirmed.*

PRESTON, C. J., EVANS and ARTHUR, JJ., concur.