LUCILE COULTER, Appellant, v. CLARENCE COULTER, Appellee.

**DIVORCE:** Grounds—Non-physical Violence. Life may be endangered
1 by treatment though it involves no physical violence. Evidence held ample to justify a decree of divorce, contrary to the ruling of the trial court.

**DIVORCE:** Condonation—Insufficient Basis. The plea of condonation
2 is not established by evidence that, on one occasion, and for a considerable period of time, the wife visited the husband, in order that he might visit with the children, the husband and wife not cohabiting as husband and wife; and especially is this true when throughout said visit there was no reformation in the husband's conduct.

**DIVORCE:** Residence—Absence on Visit—Effect. A bona-fide resi-
3    dence in this state, once acquired, is not lost by a temporary visit
of some considerable length in a foreign state.

**Headnote 1:** 19 C. J. pp. 48, 142. **Headnote 2:** 19 C. J. p. 146. **Headnote 3:** 19 C. J. p. 31.

**Headnote 1:** 9 R. C. L. 341.

*Appeal from Monona District Court.*—MILES W. NEWBY, Judge.

OCTOBER 25, 1927.

Action for divorce on the ground of inhuman treatment. From a decree denying relief plaintiff appeals.—*Reversed.*

*Prichard & Prichard,* for appellant.

*C. E. Cooper,* for appellee.

KINDIG, J.—In August, 1916, at Des Moines, appellant, the plaintiff, then 19 years of age, was married to appellee, the defendant, ten years her senior. Previously, appellee met his future wife, when 17 years old, at Iowa City, where she was attending the university, of which institution he was a graduate. To this union two children were born,—one a girl, January 22, 1919, and the other a boy, June 6, 1921. After residing some time in Iowa, the parties moved to New York, where the husband was engaged as a sales manager, spending some months at St. Louis, Missouri, and there kept an apartment. Mrs. Coulter was in the last named city part of the time. Cause for a divorce is based upon the statutory ground of inhuman treatment.

1. DIVORCE: grounds: nonphysical violence.

I. Harmony in the domestic affairs seems to have prevailed until after the birth of the first child. As appellant approached motherhood for the second time, appellee commenced his cruel treatment of her. His actions in this regard continued almost without interruption until the final separation. Change, if any, in his attitude was not for the better, but rather revealed increased unkindness, misuse, and abuse. The question is, Was this conduct on the part of the husband sufficient to entitle the wife to a divorce because her life was endangered thereby? We have before said:

"Life may be endangered by treatment though it involves no physical violence." *Thompson v. Thompson*, 186 Iowa 1066; *Cruse v. Cruse*, 201 Iowa 810; *Shors v. Shors*, 133 Iowa 22; *Berry v. Berry*, 115 Iowa 543.

Do the facts in this case come within the rule announced by said authorities? It is plain to us that they do. While appellant's parents were living at Moorhead, she, with her husband, was located in a distant city, large, strange, and void of acquaintances and friendships for her. Yet, when she was an expectant mother for the second time, Mr. Coulter, failing to show love and sympathy for his wife and the ordinary paternal instincts, complained of maternity, and insisted that an abortion be performed. Upon the wife's refusal, the husband flew into a rage, and consulted physicians to procure the desired result. Soon after said child was born, appellee gave himself away to "brain storms," which frightened his wife and caused her to fear for her life. Under these spells, his eyes would blaze because of a nervous frenzy, and appellant trembled in terror. He threatened to commit suicide, and said "he would tell the world she was to blame," and accordingly went into the kitchen, closed the windows, and turned on the gas. Whether he was in earnest or merely pretending is not material. Nevertheless, Mrs. Coulter came to the rescue. Immediately before and also after childbirth, while the thoughts of the threatened abortion still haunted the mother, the husband complained because of failure to permit sexual indulgences, remarking that to so associate was his "God-given right," and that, if not allowed this request, he would go elsewhere, thereupon leaving the house and remaining away for periods of time ranging from an hour to a week. Furthermore, appellee introduced his wife to a professor of a New York college, saying that, when he (appellee) was out of the city, he desired this friend to take Mrs. Coulter automobiling, for her health; and when, upon one occasion, at the instance of her (appellant's) mother, appellant accepted an invitation for a short ride, appellee went into a rage, and wrongfully accused her of infidelity. A single accusation did not suffice, but reference was repeatedly made to this transaction throughout their entire married life. Consistent with this unusual disposition, at another time appellee invited said professor, together with the dean of the same school, to the Coulter home, providing for the event bootleg liquor, in imbib-

ing which the three men became intoxicated. Part of said revelry was appellee's insistence that his wife drink some of the liquor. She refused. He then tore some of the clothing from her body; but notwithstanding, he insisted that she had voluntarily and intentionally undressed, for association with the professor. All of this, according to the record, was false, untrue, and a malicious slander. Appellant was at all times innocent, pure, and virtuous, yet throughout the future she was required to undergo the humiliation and annoyance of constant accusations of unchastity. Not only was appellee thus willing to torment his wife, but, not content therewith, he told the untrue story to relatives, friends, and strangers alike. At the hilarious party above referred to, the husband carried about the house a large butcher knife, while the "professor" was armed with a revolver. Finally, appellee admitted that all said accusations were false and untrue, and that his wife was guilty of no moral wrong. One witness testified that in her presence appellee threw a vase at appellant, scarcely missing the mark, and with insinuation, he falsely remarked that he was not responsible for the children. The testimony of appellant is corroborated. Our purpose has not been to set out all the testimony revealing inhuman treatment. Principal events only have been covered. There are many minor tributaries flowing into and supplying the great stream of abuse which this unkind husband imposed upon his helpless and timid wife. And all this he did without cause, excuse, or justification. As shown by the declarations of the wife, as well as those of a physician, the result was a severe impairment of health, a threatened nervous breakdown, and the endangerment of her life. Cause for divorce has been sufficiently established.

II. Condonation is pleaded by appellee as a defense. Basis therefor is founded upon the fact that Mrs. Coulter left her husband in June, 1923, coming to Moorhead to live with her parents, and afterward, at the instance and request of 2. DIVORCE: condonation: insufficient basis. her husband, she went to Lancaster, Pennsylvania, Thanksgiving Day, 1924, where he was residing, in order that the father might visit the children, and she could have an opportunity to observe his conduct toward her and them. Separate living quarters were provided for the mother and little ones, the husband not residing with them, until finally, when the mother and babies went to New York for a

visit, and then returned, they found him in their apartment. The entire family lived there for a short time, against the mother's will, but during that period there was no cohabitation or association as husband and wife. Such are the statements of Mrs. Coulter, and she is supported by the record, including Mr. Coulter's letter of invitation, containing express language to the effect that during said visit it would not be necessary for cohabitation, and that Mrs. Coulter was to be his guest, rather than his wife. Unsupported statements of appellee and the negative, rather than positive, evidence of his witnesses, are not sufficient to change our conclusion in this regard. Moreover, condonation is always conditional on the fact that the party forgiven will thereafter abstain from the commission of like offenses. If they are afterward renewed, the original wrong is revived, and the condonation is not a bar to an action for divorce. *Craig v. Craig,* 129 Iowa 192; *Davison v. Davison,* 182 Iowa 1116; *Hickman v. Hickman,* 188 Iowa 697. Reference throughout this visit was made by appellee concerning appellant's unfaithfulness, and other acts of unkindness and cruelty were directed by him at her, resulting in a renewal of the inhuman treatment. *Davison v. Davison,* supra, contains the following discussion:

"It is contended, on behalf of appellant, that, after plaintiff filed her petition, there was an attempt at a reconciliation between the parties, and that all prior offenses were condoned by the parties. Plaintiff did not, however, dismiss her petition, and the attempt at a reconciliation proved futile, and was terminated in a very short time. Plaintiff complains of the conduct of defendant thereafter, and it is quite apparent that there was such a repetition of the acts previously complained of that the rule of condonation should not be applied."

So in this case, appellant suffered appellee's commission of his former acts. The plea of condonation fails.

III. Jurisdiction is denied, on the theory that appellant did not establish that she resided in Iowa a year before the commencement of the action. Recorded facts disclose that appellant came to her father's home at Moorhead in June, 1923, with the intention of there residing, with her children, in order that they might receive the support of their grandparents. This action was commenced in the district court on the 25th day of July, 1924; and, as above

3. DIVORCE: residence: absence on visit: effect.

stated, appellant took the children to visit their father, at Lancaster, Pennsylvania, Thanksgiving Day, 1924, and returned with them to the paternal home at Moorhead, August 17, 1925, after the little girl had been permitted to attend school in Lancaster. Appellant's testimony was to the effect that her residence for said period was in Iowa, and that, after leaving her husband, she had no thought or intention to, and did not, acquire a residence elsewhere, her absence being for the purposes of said visit, and the permission of said child to attend school in order that attendance might not be lost in traveling back and forth. Lack of jurisdiction is not shown. On the contrary, such fact was sufficiently established by appellant.

IV. At all times, the children have remained with their mother, who loves them, and is fit, competent, and able to feed, clothe, and educate them, in the home of their grandparents. Appellant has been intrusted with and has borne the burden of their care, and at this time there is no reason to disturb the said status.

Because of the errors suggested, the ruling of the district court is hereby reversed. The appellant is entitled to a decree giving her an absolute divorce from appellee, and granting unto appellant the care and custody of said children.—*Reversed.*

EVANS, C. J., and STEVENS, FAVILLE, and WAGNER, JJ., concur.