Henry C. Robbins, Appellee, v. Maude M. Robbins, Appellant.

No. 46223.

January 11, 1944.

Rehearing Denied March 10, 1944.

Edward J. Dahms and Jordan & Jordan, all of Cedar Rapids, for appellant.

Bronson & Ellis, of Manchester, for appellee.

SMITH, C. J.—The petition, filed June 10, 1941, alleges cruelty generally, "during the past several months," by continual nagging and scolding and threatening to leave plaintiff and the children, absence from home for considerable periods of time in company of another man, and by neglecting the children and failing to provide for their food, care, and comfort. Specifically, it alleges that on June 1, 1941, defendant left home and has since remained away in company of another man, and that during said time she was arrested with said other man in another county. Adultery is not pleaded.

Defendant, by answer filed June 23, 1941, and amendment thereto April 7, 1942, in effect pleads general denial, condonation, and recrimination. There is a "reply to amendment to answer" filed April 9, 1942, and a "reply" filed August 19, 1942. These pleadings admit that there had been a reconciliation and condonation but allege subsequent wrongful conduct of defendant and consequent revival of the original cause of action.

At the time of trial plaintiff was forty-two and defendant thirty-one years old. They had been married twelve years and had three children: two daughters, aged eleven and seven years, respectively, and a son four years old. Plaintiff was engaged in electrical repair work. Defendant at times had assisted him and they had also occasionally engaged in some small farming and stock-feeding activities. Defendant at some periods of their married life had also worked and earned wages. Some property had been accumulated by their joint efforts. The details are unimportant as no complaint is urged on appeal to that part of the decree concerning division of property.

The trial court appropriately refers to the record as "sorry and sordid." The later years of the married life of these parties were unhappy, by the testimony on both sides. There had been prior separations and the wife (defendant here) had twice sued for divorce. Both suits were dismissed without trial. The details are not shown but some conveyance of property was made by the husband to the wife in settlement.

The trouble which has culminated here seems to have begun in the spring of 1939. It would be quite impossible to compress the testimony of some thirty-five witnesses and of the parties themselves into any reasonably short statement. The trial lasted a week and there are 988 pages of transcript which we have felt constrained to examine in view of the importance and nature of the case and of some apparent inadequacy of presentation.

The district court granted plaintiff a divorce and awarded him the custody of the children, requiring, however, that they be kept at the home of plaintiff's sister with reasonable opportunity for defendant to visit them.

Appellant in argument urges but three propositions: *First,* the record "fails to establish that after the admitted condonation and resumption of marital relations until February 15, 1942, any act was committed * * * by the defendant which endangered the life of plaintiff"; *second,* the court erred in considering the allegations of the petition "in view of the * * * continued cohabitation of the parties after this cause was at issue" and the consequent condonation of the alleged misconduct of defendant; and *third,* the granting to plaintiff of the custody of the children.

We shall later take up these three propositions in their order but first must examine the record bearing on the original allegations, even though appellant does not here directly question the sufficiency of the evidence in that respect. The case is triable here de novo and not on errors.

I. We have a record of sharply conflicting testimony. The controversy is entirely one of fact. Though the case is triable anew in this court, we are governed by some limitations not present in ordinary equity appeals. We have repeatedly said:

"In cases of this kind, although they are in equity, and triable *de novo* here, in the presence of a serious conflict in the testimony, we are disposed to give serious consideration to the decision of the trial court, in determining final disposition of the case here." Massie v. Massie, 202 Iowa 1311, 1312, 210 N. W. 431, 432, citing cases.

See, also, Kingery v. Kingery, Iowa, 275 N. W. 561; Blew v. Blew, 225 Iowa 832, 282 N. W. 361.

In fact, we have said that:

"* * * in no other class of cases are the personal bearing, attitude and bias of the witnesses of more value in determining their credibility or in weighing their testimony. In this respect, the trial court has such an advantage over an appellate tribunal having nothing but the printed record before it that, where a question to be decided turns upon the veracity of witnesses, we are always inclined, though considering the issues *de novo*, to accord much weight to that court's views thereon." Pooley v. Pooley, 178 Iowa 19, 21, 157 N. W. 129.

In Berry v. Berry, 115 Iowa 543, 546, 88 N. W. 1075, 1076, we said:

"In no other litigation is the personal presence of the parties in court more important, or the weight and value of the circumstances we have mentioned more vital, than in divorce proceedings."

Such seems to be the well-established rule generally. The trial court, in divorce cases where the evidence is conflicting, necessarily exercises to a large extent a judicial discretion which will not be disturbed on appeal unless it has been clearly abused. 19 C. J., Divorce, section 19; id., section 477; 27 C. J. S., Divorce, section 194.

See Chubb v. Chubb, 297 Mich. 501, 506, 298 N. W. 111, 113, where it is said:

"While we are not restricted by the findings of the circuit court, a divorce case on appeal being heard de novo, especial consideration is given to such findings, so largely based upon the credibility of the witnesses, and the reviewing court ought not to reverse the determination of the trial court in such a case, unless convinced that it must have reached a different conclusion had it occupied the position of the lower court, under like circumstances."

See, also, the later Michigan cases: Bly v. Bly, 300 Mich. 681, 2 N. W. 2d 880; and Leisenring v. Leisenring, 302 Mich.

406, 4 N. W. 2d 705, citing Westgate v. Westgate, 291 Mich. 18, 288 N. W. 860.

With this rule in mind we approach this record. It shows many charges and countercharges. While appellant filed no cross-petition, she has, under her plea of recrimination, offered evidence of violence by appellee toward herself and of some association with other women. It is all denied by appellee and his witnesses. Most of it relates to times prior to the divorce proceedings commenced and dismissed by her.

On the other hand, appellee and his witnesses have testified to her persistent resort to the company of another man and her threats and acts of violence toward appellee, both before and after condonation. All this is denied by her and her witnesses. The conflicts in evidence are irreconcilable. The occasions and incidents are too numerous to summarize and quite unnecessary (and frequently improper) to set out in detail.

The parties, by the testimony on both sides, led a turbulent and sordid existence. Each testifies to confessions by the other and each denies the testimony of the other as to such confessions. Certainly, we cannot read this record and say we must have reached a different conclusion had we occupied the district court's position. In fact, a reading of the transcript definitely confirms its judgment.

It is somewhat significant that, notwithstanding her testimony and that of her witnesses, appellant filed no cross-petition, either for divorce or separate maintenance. It is also significant that her counsel argues only the affirmative defense of condonation. Perhaps not too much weight should be attached to these circumstances but they furnish some support for the conclusion of the trial court.

The case comes squarely within the rule quoted from Massie v. Massie, supra, and the other cases cited. Aside from the questions argued by appellant concerning the defense of condonation, we have here only an issue of fact. There is surely "serious conflict in the testimony," the solution of which depends entirely upon an appraisal of the veracity and reliability of the various witnesses. We are in no position to say the trial court has not correctly weighed the testimony.

■ II. We have next to consider the first proposition urged by appellant. It presents this question: Where the original charge is cruelty and there has been condonation, but plaintiff alleges new acts and conduct of defendant which are claimed to revive the original charges, must the new acts and conduct be in themselves such as to endanger plaintiff's life?

Condonation is a conditional, rather than an absolute, remission of the offense, the implied condition being that the offense will not be repeated. 17 Am. Jur., Divorce and Separation, section 197; Craig v. Craig, 129 Iowa 192, 105 N. W. 446, 2 L. R. A., N. S., 669; Hickman v. Hickman, 188 Iowa 697, 699, 176 N. W. 698, 14 A. L. R. 929. A subsequent offense on the part of the guilty spouse nullifies the condonation and revives the original offense as a cause for divorce. 17 Am. Jur., Divorce and Separation, section 213; Hartl v. Hartl, 155 Iowa 329, 135 N. W. 1007.

Must the new offense be of the same character and degree as that condoned? We have already, in an earlier case, answered that question in the negative:

"Subsequent conjugal unkindness will avoid condonation, even though such unkindness be less than extreme cruelty, and be insufficient, of itself, as a ground of divorce." Hickman v. Hickman, supra, 188 Iowa 697, 699, 176 N. W. 698, 14 A. L. R. 929, citing cases.

See, also, 17 Am. Jur., Divorce and Separation, sections 213, 216; 19 C. J., Divorce, section 206; 27 C. J. S., Divorce, section 62.

Examination of the record shows that the testimony of conduct and acts after condonation is not materially different from that relating to prior conduct. There is the same conflict in evidence and the same reasons for upholding the decision of the trial court. The cruelty relied on consists of continuing acts and conduct and it is the cumulative result that constitutes the cause of action. The argument of appellant is unsound.

■ III. Appellant contends that, because condonation occurred after the case was at issue: "The original petition and all that was in it certainly was killed and was dead as a cause of action by the undisputed resumption of marital relations between these parties."

We cannot subscribe to this proposition. It is appellee's contention here that the condonation was nullified by the subsequent and continued conduct of appellant. It has been said that authorities are not in accord as to whether, in this situation, the plaintiff must file a supplemental bill or begin de novo. 17 Am. Jur., Divorce and Separation, section 199. In no jurisdiction do we find it held that the subsequent conduct which revokes the condonation must constitute a new cause of action or that the prior conduct becomes immaterial. See the authorities we have already cited in Division II.

The defense of condonation must be specially pleaded. Inman v. Inman, 196 Iowa 845, 195 N. W. 583, citing Chapman v. Chapman, 181 Iowa 801, 804, 165 N. W. 96, and Craig v. Craig, supra, 129 Iowa 192, 105 N. W. 446, 2 L. R. A., N. S., 669. It is an affirmative defense.

Under our Code practice, one office of a reply was to allege new matter, not inconsistent with the petition, and which was claimed to avoid affirmative defenses pleaded in the answer. Code of Iowa, 1939, section 11157. See now, Rule 73, Iowa Rules of Civil Procedure.

There is no occasion for requiring the filing of supplemental pleadings in a situation of this kind. Appellant, in effect, by her amendment to answer pleaded matter supplementary in character. Code of Iowa, 1939, section 11221. [See Rule 90, Iowa Rules of Civil Procedure.] Appellee in reply did the same. No objection was made to this manner of pleading. In fact, we see no ground for objection.

Nor can we see any necessity for requiring that the case be dismissed, in view of appellee's undoubted right to begin anew where the condonation has been nullified and the original cause revived by subsequent misconduct. Our conclusion at this point is supported by Davison v. Davison, 182 Iowa 1116, 165 N. W. 44.

IV. Appellant complains of that part of the judgment which provides for the custody of the children. It awards the custody to appellee but requires him "to keep said children at the home of his sister Mrs. Pearl Pardee in Delaware County with the right of reasonable visitation" by appellant. In his findings the presiding judge defined what would be meant by

"reasonable times" in order that the visits should not interfere with the children's schooling and attendance at church.

The evidence shows that Mrs. Pardee lives on a farm; that she is a graduate of Iowa State College, qualified to teach vocational and home economics. At the time of the trial she was substituting as a teacher in the Oneida Consolidated School. She testifies she has no children of her own; she knows these children, having kept them most of a previous summer; and that she and her husband are "willing to take the care and comfort of the children and their education."

We approve of the arrangement. It seems wisely designed for the best interests of the children themselves, while safeguarding the parental right of reasonable association and visitation. It is a matter which the court can control by subsequent order if conditions shall later require change.

When parents are divorced there is no perfect arrangement for the children. The court in this case has, we believe, made the very best order possible, under difficult circumstances.

For the reasons we have stated, the decision of the district court is—Affirmed.

All JUSTICES concur.