ERNEST W. ZUERRER, Appellee, v. JANE EILEEN ZUERRER, Appellant.

No. 46972.

MAY 6, 1947.

Phelan, Karr & Karr and Burnstedt, Hemingway & Hemingway, all of Webster City, for appellant.

Thomas M. Healy, of Fort Dodge, for appellee.

HAYS, J.—Ernest W. Zuerrer, plaintiff, asked for a divorce from his wife, Jane Eileen Zuerrer, and the exclusive custody of their two minor children, Janet Elaine, born March 13, 1943, and Nancy Jane, born October 20, 1944. Plaintiff charges defendant with such cruel and inhuman treatment as to endanger his life and health. Defendant denies the cruel and inhuman treatment and further alleges condonation. The trial court granted plaintiff a divorce, the care and custody of the two minor children, with right of visitation to defendant. Plaintiff was directed to pay defendant $1,250, with the homestead granted to plaintiff. From the decree thus entered, defendant, Jane Eileen Zuerrer, appeals.

Appellant submits five propositions as a basis for reversal, which may be consolidated as follows: (1) the record does not show such cruel and inhuman treatment as to endanger appellee's life (2) the record shows appellee condoned appellant's conduct (3) the welfare of the two minor children requires they should have their mother's care and (4) the property division was inequitable.

Section 598.8, Code of 1946, provides:

"Divorces from the bonds of matrimony may be decreed against the husband for the following causes * * * 5. When he is guilty of such inhuman treatment as to endanger the life of his wife."

Section 598.9, Code of 1946, provides:

"The husband may obtain a divorce from the wife for like cause * * *."

Section 598.14, Code of 1946, provides:

"When a divorce. is decreed, the court may make such order in relation to the children, property, parties, and the maintenance of the parties as shall be right."

I. There is no dispute between the parties concerning the law involved, as the legal principles are well established. As this court has said many times, legal precedents are of little value in cases of this type. Each case must, from necessity, depend upon the specific facts involved. Littleton v. Little-

ton, 233 Iowa 1020, 10 N. W. 2d 57. However, while a proper determination of the questions here involved requires an examination of the record, it will not be amiss to first state a few of the legal principles involved and in the light of which the facts must be viewed.

In the early case of Freerking v. Freerking, 19 Iowa 34, this court said:

"The statute requires two ingredients in cruel treatment to constitute ground for divorce: 1st. It must be inhuman; 2d. It must endanger life."

In Beebe v. Beebe, 10 Iowa 133, 135, appears the following:

"In the case of cruelty under our statute, the treatment received is not of itself a cause of divorce, and becomes material only as showing a just foundation for the apprehended danger to life. And this cause of divorce is founded on the well recognized law of nature, that the duty of self preservation takes precedence, and that the duties of this relation are not required to be performed in a state of personal danger."

Proving grounds for divorce without proving that health or life has been endangered thereby presents a total failure of proof. Veeder v. Veeder, 189 Iowa 912, 179 N. W. 136; Hill v. Hill, 201 Iowa 864, 208 N. W. 377. However, life may be endangered by treatment though it involves no physical violence. Coulter v. Coulter, 204 Iowa 575, 215 N. W. 619; Lewis v. Lewis, 235 Iowa 693, 17 N. W. 2d 407.

Turning now to an examination of the facts as disclosed by the record in the instant case, appellee, age thirty, and appellant, age twenty-seven, were married at Fort Dodge, Iowa, in 1939. Both are lifelong residents of that city. Prior to their marriage, both were working, and by a pooling of their earnings they were able to finance their home, in which they have resided since marriage. Appellee was employed in the sales office of the Tobin Packing Company in April 1943, at which time he was inducted into the military service. They have two daughters, born in 1943 and 1944. The record discloses they maintained a very happy home up to the time appellee entered the

Army. Shortly thereafter the trouble began.

Appellant commenced keeping company with one Herbert Wolff, who was working at the same place appellant worked and lived in the same neighborhood. They would be seen together in beer taverns, at dances, sitting along the river bank, and in Wolff's car in parking lots late at night. On several occasions he was seen in appellant's home, seated on a davenport, with the lights out. Once, at least, Wolff brought her home in such condition as to require her being carried into the house. Her conduct attracted the attention of the Fort Dodge police. During her many meetings with Wolff, she would have the children with her or would leave them at home in the care of a high-school girl, hired to stay with them. Nothing is to be gained by a detailed rehearsal of the facts, especially in view of the fact that there are two young children involved in this unhappy affair. Suffice to say, the record amply sustains the trial court's finding of inhuman treatment.

In August 1945, appellant purchased a car and, with her mother and the two children, went to Bakersfield, California, where she obtained work. In November 1945, appellee returned to the States and joined them at Bakersfield. There is evidence to the effect that immediately appellant told appellee that she wanted a divorce and to live in California. However, they returned together to Fort Dodge, arriving about December 3, 1945. They immediately went to their own home and resided there until December 26, 1945.

Soon after their return home appellee commenced to hear of his wife's conduct during his absence. This information came to him piecemeal. As new information reached his ears he confronted his wife with it. Some of it she admitted; some she denied. She continuously denied having been intimate with Wolff. These daily arguments continued until December 26, 1945, when appellant, taking two grips, left her home and was gone about ten days. Where she was, was not known to appellee until her return about January 4, 1946. In the meantime, appellee had taken his two young daughters and moved into his parents' home.

The record shows that, while appellee returned to his old job shortly after his return, he had trouble performing his duties. He was worried, nervous, and irritable. He was ashamed to meet his friends and refused to mingle with them. At night he was unable to sleep and would often walk the floor. This condition continued and grew, as additional information concerning his wife's conduct came to him, and reached a climax when, without notice or reason, she left her home, children, and husband for parts unknown.

This is not a case of physical violence, although there is evidence of appellant's slapping appellee several times. The entire misconduct of appellant, upon which this cause is based, took place in the absence of and without the knowledge of appellee. In fact, it appears that during appellee's absence he received from three to six letters a week from appellant. It was unquestionably a tremendous shock to him to learn of his wife's conduct upon his return to what he thought was a happy home. As we stated in Littleton v. Littleton, supra, 233 Iowa 1020, 1024, 10 N. W. 2d 57, 59:

"Mistreatment of the kind indicated by the record, which deprives a person of needed rest and peace of mind, may so affect his nervous system and bodily functions as to undermine his health and thereby endanger his life as effectively as blows or bodily abuse, whether the victim be a man or a woman."

Under the record, the finding of the trial court that a divorce should be granted is justified.

II. Appellant further alleges as a basis for reversal that appellee has condoned the inhuman treatment. Condonation is the forgiveness of an antecedent matrimonial offense on condition that it shall not be repeated and that the offender shall thereafter treat the forgiving party with conjugal kindness. Full knowledge of the matrimonial offense is an essential element of condonation thereof. 27 C. J. S., Divorce, section 60; Massie v. Massie, 202 Iowa 1311, 210 N. W. 431; Williams v. Williams, 230 Iowa 244, 297 N. W. 294. To revive the original offense by subsequent misconduct of a different nature it is not essential that the misconduct should be such as, in

itself, to justify a divorce. Hickman v. Hickman, 188 Iowa 697, 176 N. W. 698; 14 A. L. R. 929; Robbins v. Robbins, 234 Iowa 650, 12 N. W. 2d 564.

The record here shows that after appellee's return from military service he and appellant resumed marital relations. However, the record does not show that appellee, at that time, had full knowledge of the conditions that existed during his absence. During the time between his return, late in November, and December 26, 1945, when his wife left the home, new information was continually coming to appellee and divorce was a common topic of conversation between them. On December 26, 1945, appellant, without apparent reason, after a quarrel with appellee, left the home and her children, with destination unannounced. Even assuming, but not holding, that the affairs were condoned by appellee, the conduct of the wife in leaving as she did, while not in itself a ground for divorce, is sufficient to revive the prior misconduct. The burden of proof on a plea of condonation is on the person asserting the condonation. Sesterhen v. Sesterhen, 60 Iowa 301, 14 N. W. 333. Appellant has the burden of proof and has failed to produce the quantum required. There is no condonation.

III. Appellant further alleges that the welfare of the two minor children requires they should have their mother's care. In determining questions of this nature, the primary objective of our courts has always been, "What is for the best interest of the children?" How it may affect either the father or the mother is a secondary matter. Robbins v. Robbins, supra, 234 Iowa 650, 12 N. W. 2d 564; Neve v. Neve, 210 Iowa 120, 230 N. W. 339.

The record here shows two daughters of very tender years. While the mother apparently looked after their physical wants in a fairly satisfactory manner, she was totally lacking in those qualities that a mother should have in the rearing of her daughters. The record shows she was continuously taking them into the beer taverns where she would meet with Wolff. She would leave them at night in the care of strange girls and on

a few occasions she was gone for a day or two. To subject these innocent children to such an environment does not appeal to the conscience as being for their well-being. While now they need a mother's care, according to her claim in this appeal, yet, on December 26, 1945, when she left them, she apparently gave little thought to their welfare. In questions of this kind the appearance and demeanor of the parties during the trial is of great assistance in arriving at a correct answer. This the trial court had. The record shows the appellee to be a steady, industrious man. The children are being well cared for in the home of his parents, under his constant care and attention. We are not disposed to change this arrangement.

■ IV. Finally, appellant urges that the property division was inequitable. Under the decree entered in this case, appellant was given her personal belongings and $1,250, payable in installments. At the time appellee went into the service there was an unpaid balance on the home of $2,500, the same being valued at $5,000, and for which both appellant and appellee had contributed their savings. When appellee entered the service he left money for two annual payments on the home. From allotments and cash sent home by appellee, appellant received and spent, during appellee's time in service, about $5,000. Appellant is the guilty party, and not only was she dragging the good name of her husband and her two minor children in the dust but was likewise using her husband's savings in carrying on her misconduct. The trial court in making its decision undoubtedly considered all of these matters. It is apparent from a review of the decisions of this court that the question of whether alimony shall be allowed to the guilty party under these circumstances is largely a discretionary matter with the court. Blain v. Blain, 200 Iowa 910, 205 N. W. 785; Mitchell v. Mitchell, 193 Iowa 153, 185 N. W. 62. We do not find an abuse of discretion.

There being no error, the decree of the trial court should be and is—Affirmed.

All Justices concur.