Kenneth H. Wendel, appellee, v. Shirley M. Wendel, appellant.

No. 50341.

(Reported in 109 N.W.2d 432)

June 13, 1961.

L. L. Boomhower, of Mason City, for appellant.

Mason & Stone, of Mason City, for appellee.

Larson, J.—The sole issue in this appeal is whether the trial court abused its discretion when in an action for divorce it

granted custody of William Dean Wendel, an adopted three and a half year-old child of the couple, to the plaintiff, Kenneth H. Wendel.

Defendant, Shirley M. Wendel, admits she was at fault and that such fault was sufficient with the disclosed consequences to entitle plaintiff to the divorce. She strongly contends, however, that her fault was not sufficient to overcome the presumption that as his mother she was best fitted to have the care and custody of this child of tender years.

No fault was found in plaintiff, but the trial court found under the facts and circumstances disclosed by the testimony that defendant was "totally immoral, without remorse or shame concerning her past conduct and that her character is such that she is not a fit person to have custody of the minor child." After a careful review of the record and the exhibits, we must agree with the trial court.

The facts are simple and largely undisputed. Plaintiff, now 34 years old, and defendant, now 30 years of age, were married September 19, 1950, and lived together as man and wife on a small acreage north of Mason City until the Fall of 1960. They rented and farmed 160 acres some eight miles from the residence. Defendant off and on supplemented their income by work in Mason City. The child, William, was adopted on January 22, 1958, and received adequate kind and loving care from both parties.

Early in 1960 plaintiff became aware that all was not well with their marriage. Defendant appeared nervous, dissatisfied and impatient with him and began unusually frequent trips to town. Plaintiff had to attend the child when she was away on these trips and several times took William to the farm while he did the chores. Plaintiff was suspicious that she was seeing another man. After several occasions when she was out until two or three o'clock in the morning, he talked to her about her associations with a social acquaintance. She admitted seeing this man but did not then admit improper relations with him. When the situation became worse, the defendant took the child about the first of May and went to live with her parents who resided near Plymouth, Iowa.

Apparently something went wrong with defendant's plans and she returned during the first week in July and promised that if plaintiff would take her back she would behave herself, never leave again, and would again be a good and faithful wife to him. He took her back and believed her until he was shown some letters written by defendant to her paramour sometime in August. These letters had been found by the other man's wife and she had left him immediately. Apparently defendant had added deceit to her indiscretions and plaintiff ceased to live with her as his wife. Defendant then confessed her improper relations with the other man and indicated her desire for a divorce. On October 10, 1960, she permanently left plaintiff's home, and until the trial she and the child remained with her parents.

We prefer not to relate the contents of the letters introduced as Exhibits P-2 to P-9 as it would serve no useful purpose. It is sufficient to note that defendant admitted she wrote them to the other man, that she never intended them to be seen by any other person, and we agree with plaintiff's counsel that the shocking language she used to convey her feelings to her lover, which she said she could not help, were better fitted to the barroom than the parlor. We simply observe that they disclose a weakness of character which, if unchanged, would make her morally unfit to have the care and custody of any child, no matter how much she loved it or how carefully she tended its physical needs. These letters disclose contempt for the better values in life, for her legal spouse, and his efforts to satisfy her. They disclose no concern over what her former friends or relatives thought of her or her conduct, or that she was guilty of the crime of adultery and of actively attempting to break up, not only her own home, but the home and family of a social acquaintance. She expressed no concern as to the three children in the other family. We can reach only one conclusion, that without a complete change as to moral values, she disclosed complete unfitness to give proper moral training to a child, and the burden became hers to convince the court she had changed at the time of the trial. This she did not do, but on the contrary admitted she continued to see the other man. The only expression of regret or sorrow at the trial was that "* * * I made a big mistake."

Without more, this was not sufficient to purge her guilt or strongly indicate an honest reformation. On the other hand, it seems the impression the trial court received as a result of her testimony before it was most unfavorable to her.

I. It is well settled in this state that the best interest of the child must govern in controversies involving child custody, and all other considerations, such as parental rights or desires, must yield to that determination. Patzner v. Patzner, 250 Iowa 155, 159, 93 N.W.2d 55, 57, and citations; Ball v. Ball, 250 Iowa 763, 766, 96 N.W.2d 317; Jensen v. Jensen, 237 Iowa 1323, 1324, 1325, 25 N.W.2d 316, 317. It is true that the best interest of the child is usually served by granting custody to one not at fault, but this must not be taken as a reward for the innocent and punishment for the transgressor. However, here we find no merit in defendant's contention that due to her weakness or confusion she is being punished by the court, and the plaintiff rewarded. We consider only the welfare of the child, not the rights of the parties, although if the custody was to be awarded on that basis, plaintiff should prevail.

II. This case is triable de novo, and so far as the record evidence is concerned, we have so considered it. However, as is the rule in this jurisdiction, we give substantial weight to the findings of the trial court. The proper weight to be given testimony of the interested parties depends a great deal upon the observations and impressions of the court below. We have said that the proper determination usually involves fact questions, which in turn depend upon matters of credibility of witnesses, as well as the character and demeanor of the litigants. The trial court, of course, was in a better position than we to determine such matters. Thus we are justified in giving weight to its conclusions, and have often said in that regard that its judgment, based on those conclusions, amounts to a discretion which must stand unless it appears there was an abuse of discretion. Maron v. Maron, 238 Iowa 587, 591, 28 N.W.2d 17, and citations; Staggs v. Staggs, 250 Iowa 938, 940, 96 N.W.2d 736; Jones v. Jones, 251 Iowa 1148, 1156, 104 N.W.2d 449, 453, 454, and citations. This is just such a case, and the trial court's con-

clusion as to defendant's character and her lack of remorse are given substantial weight herein.

The basis of defendant's contention that the trial court abused its proper discretion has no merit. She maintains the court was unduly prejudiced against her because of the language used in the letters written by her, and because of her refusal, on advice of counsel, to answer questions concerning the extent of her adulterous relations with the other man. We do not attach that significance to these matters. While no case has come to our attention where we have granted or denied child custody to a mother solely due to her past adulterous acts, the correct rule in such matters, we think, was stated in Shrout v. Shrout (Oregon), 356 P.2d 935, 937.

■ III. Not every act of indiscretion or immorality should deprive a mother of the custody of her children, but in all cases motherhood is a factor to be given weight in deciding questions of child custody. Certainly any moral transgressions of the mother must be considered, together with other relevant factors, in determining what is best for the child. The Oregon court in Shrout v. Shrout, supra, went on to correct a false impression created by words used in former Oregon cases of Goldson v. Goldson, 192 Ore. 611, 621, 236 P.2d 314, and Sakraida v. Sakraida, 192 Ore. 217, 228, 217 P.2d 242, 233 P.2d 762, 764, and cited in 17A Am. Jur., section 820, page 16. It said that arbitrary rules that exclude immorality as a relevant factor unless it is "gross", "depraved", or "wicked", or unless it has a "direct bearing", serve only to hamper the trial court in weighing all the evidence and in arriving at a decision which will best promote the welfare of the child. Obviously that conclusion is correct.

IV. We have taken much the same view in our cases, although we have never expressed it as a rule. Most of our cases arise when a repentant parent attempts by habeas corpus, or by application for modification, to obtain the custody of his child formerly granted to another. In Thein v. Squires, 250 Iowa 1149, 97 N.W.2d 156, we denied a former delinquent mother the right to gain custody of her children, not because of her past fault, but because we felt once established in a home

of good care and moral training they should not be disturbed short of most cogent reasons. The reformed mother's desire was not such a reason.

In Staggs v. Staggs, supra,* 250 Iowa 938, 96 N.W.2d 736, custody of her children had been granted the mother. However, as a result of improper intimacy sometime thereafter, she gave birth to an illegitimate child, and upon application of the former husband the children were taken from the mother and given to the father. We upheld the change due to her indiscretions and the resulting situation in the home due to the fatherless child.

In Schnor v. Schnor, 235 Iowa 720, 17 N.W.2d 375, 157 A. L. R. 628, we recognized a mother's unfitness to have the custody of her child on proof of her adultery and her callous and calculated indifference toward the father. Also see Zuerrer v. Zuerrer, 238 Iowa 402, 27 N.W.2d 260, and Robbins v. Robbins, 234 Iowa 650, 12 N.W.2d 564.

We are satisfied the trial court considered, as we have, the testimony as to facilities available for the care and training of this child, as well as the love and affection of the parties for him. In either case there will be considerable periods when William must be with so-called babysitters. The defendant works from early morning until late afternoon, and her mother, who cared for the child prior to the trial, planned to do so in the future. On the other hand, plaintiff must work his farm, and at such times the child must be left with his parents, his sister-in-law who lives in Mason City, or some hired housekeeper. All these arrangements were shown adequate, but they are not perfect. Unfortunately this is an inevitable result of a broken home.

Plaintiff has a modern house near schools and, when occasions require, he can leave the child at his brother's place where there is a child of its own age. At other times the child will be cared for by the father himself. We are satisfied the welfare of the child will best be served by allowing custody to remain in the plaintiff.

V. Defendant also asks us to grant her additional sums to cover her attorney fees and printing costs in this appeal. Under an order of this court plaintiff has advanced defendant $150

toward her attorney fees and $125 toward her printing costs. In view of the fact that the trial court granted her almost one half of the value of the property accumulated by the parties, and that she has a steady job at $40 per week, we find no just basis for such request. Plaintiff, with heavy debts, must continue to adequately care for the child and pay for the additional help needed. We are satisfied defendant is well able to and should pay the balance of her own costs and attorney fees herein. The judgment of the trial court is affirmed.—Affirmed.

All JUSTICES concur except BLISS, J., who takes no part.