NONA HARDEN O'BRIEN, Appellee, v. JOHN EDWARD O'BRIEN, Appellant.

FEBRUARY 7, 1928.

*Gillies, Daugherty & Oughton*, for appellant.

*Gilmore & Moon*, for appellee.

FAVILLE, J.—The parties to this action were married January 23, 1918, and lived together as husband and wife until their separation, in February, 1926. At the time of the marriage, the appellee was not quite 18 years of age, and the appellant was about 36. Three children have been born to these parties, and at the time of the trial the eldest was a boy of 7, the next a boy of 6, and the youngest a girl of 4. During their married life, the parties operated a farm. The evidence is voluminous, and no useful purpose, either to the parties or to the profession, would be served by elaborating it in detail. The disparity in the ages of the parties may have contributed in some degree to the lack of mutual respect and confidence that should have existed be-

tween them. The record is replete with accusations and counter accusations, with criminations and recriminations. Among these, three transactions stand out that are worthy of comment. While there had been frequent verbal differences, there does not appear to have been any personal violence until in July, 1924. At that time, pursuant to a style then prevalent and becoming increasingly popular among the women of her age, the appellee had her hair "bobbed." Previous to said time, the parties had discussed this matter on various occasions, and the appellant had, doubtless with some manifestation of insistence, protested against the threatened amputation. Finally, without advising the appellant of her purpose, the appellee went to town and had her hair "bobbed" in the approved modern style. When she returned home, she found her husband at the barn, engaged in the humble but essential occupation of milking the cows. The appellee exhibited herself to her husband, with her tresses shorn. What followed is a matter of dispute. Appellee contends that the appellant immediately became greatly angered, and at once proceeded to strike the appellee with his fist, knocking her to the barn floor and severely bruising her head. She says that in the conflict he knocked over the cream separator, and that he dragged the appellee through the spilled milk and the dirt of the stable floor, causing her physical injury and great humiliation. Appellant, on the contrary, concedes that he was incensed at the time, but insists that he inflicted no physical injury to the appellee, but rather, gave vent to his feelings by assaulting the cream separator, instead of the person of the appellee, and that he relieved his pent-up indignation by kicking the separator over and spilling the milk on the barn floor. He says that he then left the barn, breathing out threatenings to leave home, never to return, and that appellee pursued him with much agility, successfully leaping two fences in the chase. It is difficult to get from the record the exact facts of this transaction. Under the appellant's own testimony, there was at the time a quarrel, and a tussle that approached, at least, the proportions of a fight. Doubtless the appellant felt angered by the conduct of his spouse in having her hair "bobbed," notwithstanding his urgent protest; but we think it can hardly be said that disapproval of that act would justify the appellant in beating the appellee with his fist and in dragging her through the filth of the stable,

coupled with threats of immediate desertion and a castigation by opprobrious epithets. It may be that wifely duty might well have prompted the appellee to be guided by the known wishes of her husband, despite the natural cravings of the feminine heart to conform to the latest style in the matter of hirsute adornment. The appellant may have preferred that his wife should wear flowing tresses of the kind that enwrapped the fair form of Lady Godiva, rather than the abbreviated knot that graced the classic features of the goddess Psyche; but even so, he could not legally manifest his disapproval of her act by assaults upon her person of the character that the statute denominates cruel and inhuman.

A physician was called, at the time, to treat the appellee for injuries she claims to have received.

Another transaction related to a time when the appellee had mixed up some scale tickets, and appellant became peeved, and threatened to slap her face for having done so. The record tends to show that the appellee applied improper epithets to the appellant, and rather dared him to slap her. In any event, he did so. Under all of the circumstances, this transaction alone may not be sufficient to support the appellee's claim for a divorce, but it is proper to consider it in connection with the other testimony in the case, and we have done so.

Regarding the final transaction, it seems that the appellee had gone to town in an automobile, and that while there, she was staying at the home of her parents. It rained, and, having no chains with which to equip the car, she phoned to her husband, advising him that she would remain at her parents' home, having the children with her. She remained overnight, and so long a time thereafter that the appellant became greatly angered, and finally went to the home of her parents, where the appellee was with her children, carrying a shotgun with him. He entered the house unannounced, and threatened violence to anyone who attempted to go near the telephone. He was greatly angered at the time, and from a fair construction of the evidence it appears that he threatened to kill his wife, and had the apparent means with which to do it. He threw a shell from the gun, for the obvious purpose of manifesting to the family that the gun was loaded. He now contends that the shells were loaded with rye, instead of with shot, and that his display and manifesta-

tion at the time were what he calls "a bluff" on his part. The wife, according to the preponderance of the evidence, fainted away at the time, and had "a heart attack;" and the final outcome of the matter was that the appellant finally left, and the appellee and her children remained at her father's home, and she has never returned to the appellant's home since. The result of the conduct at that time was such as to necessitate the attention of a physician.

Upon the entire record in the case, regarding it as a whole, we hold that the appellee established her right to a divorce on the ground of cruel and inhuman treatment of such a character as to endanger her life. The decree of the trial court, in all respects, meets with our approval. The appellant's cross-petition was properly dismissed, there being no evidence whatever in the record to sustain the charge therein. Cases of this character are necessarily dissimilar in their facts, but, as bearing somewhat on the conclusion reached in this case, see *Coulter v. Coulter*, 204 Iowa 575; *Hickman v. Hickman*, 188 Iowa 697; *Craig v. Craig*, 129 Iowa 192.

The decree is—*Affirmed*.

STEVENS, C. J., and EVANS, KINDIG, and WAGNER, JJ., concur.